IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

DONALD P. WENDT,

                Plaintiff,

                                     Civ. Action No.
        v.                          5:12-CV-0342 (GLS/DEP)

UNITED STATES DEPARTMENT OF
AGRICULTURE FARM SERVICE AGENCY,
UNITED STATES DEPARTMENT OF
AGRICULTURE/NATURAL RESOURCE
CONSERVATION SERVICE, UNITED
STATES DEPARTMENT OF AGRICULTURE/
COMMODITY CREDIT CORPORATION,
WILLIAM S. JONES, PAUL ANTHONY RAY,
JAMES R. BARBER, DARLENE KOCHER,
ROGER ARLISS, GARY WELLS, MARK
DENNIS, VIRGINIA GREEN, RANDALL R.
CRONISER, ASTOR F. BOOZER, M. TERRY
JOHNSON, MIKE AMEELE, AMANDA MOUTON,
and BRANDON C. WILLIS,

                     Defendants.

_____

APPEARANCES:

DONALD P. WENDT, *Pro Se*
1435 Quaker Road
Macedon, New York 14502

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT, RECOMMENDATION AND ORDER</u>

Plaintiff Donald P. Wendt, who is proceeding *pro se* and seeks leave to proceed in this matter *in forma pauperis* ("IFP"), has commenced this action against the United States Department of Agriculture ("USDA"), three agencies within the USDA, and fourteen of its employees alleging a host of both tort and breach of contract claims, apparently related to the administration and termination of a contract between plaintiff and the USDA.  As relief, plaintiff seeks compensatory and punitive damages in an unspecified amount.

Having afforded plaintiff the deference to which he is entitled as a *pro se* litigant and liberally construed his pleading, I have nonetheless concluded that although plaintiff's IFP application will be granted, his complaint should be dismissed for lack of subject matter jurisdiction.

I.     <u>BACKGROUND</u>[1]

---

[1]     In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's amended complaint, the contents of which have been accepted as true for purposes of the court's initial review.  *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).

It appears that plaintiff's claims arise out of a contract with the USDA  relating to the development of a fine hardwood tree forest which provided for "cost sharing reimbursements" to plaintiff upon compliance with certain contractually specified requirements under a "Conservation Plan."  *See* Complaint (Dkt. No. 1) ¶ 20.  The specific terms of that agreement and when it was executed are not set forth in plaintiff's complaint.  The complaint alleges that the contract term was ten years and that the contract was originally to commence in June 2005.  *See id.* According to plaintiff the contract did not actually begin until October 1, 2006, and was to continue through September 30, 2016.  *See id.*  Plaintiff alleges that as a result of the delay in the commencement of the contract he suffered a corresponding lag in receiving reimbursements for costs and labor incurred by him.  *Id.*  Plaintiff further claims that during the course of the agreement, defendants failed to respond to his requests for information, failed to inspect his plantings as required, and delayed payment of his reimbursements, which caused him problems in filing his federal income tax returns.  *Id.*

It appears that the parties proceeded under the terms of their agreement and plaintiff received reimbursements for costs until on or

3

about March 10, 2009, when defendants Cronsier, Jones, Arliss, Ameele, Wells, and Mouton, as members of the Wayne County Farm Service Agency Committee, voted to terminate the contract, and failed to provide plaintiff an opportunity to make reparations as required by the Conservation Plan.  Complaint (Dkt. No. 1) ¶ 24.  Thereafter, the parties engaged in an effort to resolve their dispute, apparently by way of unsuccessful efforts at mediation as well as administrative hearings, up through the issuance of a final order in connection with plaintiff's administrative appeal.  *Id.* at ¶¶ 25-37.

Plaintiff further alleges that beginning in the fall of 2009 defendants began harassing him, claiming that he was indebted to the USDA and/or Commodity Credit Corporation in the amount of $21,912.07, plus interest at a rate of 8.620%, and seized $270.30 from his Social Security check, which was eventually refunded.  Complaint (Dkt. No. 1) ¶ 38.  In August 2010, Plaintiff filed for bankruptcy protection pursuant to Chapter 13 of the United States Bankruptcy Code.  *Id.*  Even after that date, the Commodity Credit Corporation, once again, seized $270.30 from plaintiff's Social Security check.  *Id.*

II.    <u>PROCEDURAL HISTORY</u>

4

Plaintiff filed his complaint, accompanied by an application to proceed *in forma pauperis*, on February 28, 2012.  Dkt. Nos. 1 and 2.  The complaint alleges twelve causes of action including malfeasance, breach of contract, tortious interference with contract, misrepresentation and consumer fraud, and harassment.

III.    DISCUSSION

A.    *In Forma Pauperis* Application

As indicated in his IFP application, plaintiff filed a voluntary Chapter 13 bankruptcy petition in the Western District of New York on October 4, 2010.[2]  *In re Wendt*, No.2-10-22424-PRW (W.D.N.Y. filed Oct. 4, 2010).  That proceeding is still pending.

Based upon a careful review of plaintiff's IFP application, and considering that he is presently in bankruptcy, I have concluded that he

---

[2]    Under Section 362(a)(1) of the Bankruptcy Code, the filing of a bankruptcy petition automatically stays "the commencement or continuation . . . of a judicial, administrative, or other action or proceedings against the debtor.  11 U.S.C. § 362(a)(1); *Park Nat'l Bank v. Univ. Centre Hotel, Inc.*, No. 1:06-cv-00077-MP-AK, 2007 WL 604936, at *3 (N.D.Fla. Feb. 22, 2007).  Notably, however, courts have concluded that this provision does not prohibit judicial proceedings initiated by the debtor.  *Park Nat'l Bank,* 2007 WL 604936, at *3 ("'[A]s the plain language of the statute suggests, and as no less than six circuits have concluded, the Code's automatic stay does not apply to judicial proceedings, such as this suit, that were initiated by the debtor.'") (quoting *Brown v. Armstrong*, 949 F.2d 1007, 1009-10 (8th Cir.1991)); *see also*, *In re Financial News Network, Inc.*, 158 B.R. 570, 572-73 (S.D.N.Y. 1993).

has sufficiently established his inability to pay the required filing fee due to his financial circumstances.  Plaintiff's request for permission to proceed *in forma pauperis* in this action will therefore be granted.

     B.   <u>Standard of Review</u>

Since the court has found that plaintiff meets the financial criteria for commencing this case *in forma pauperis*, I must next consider the sufficiency of the allegations set forth in his pleading in light of 28 U.S.C. § 1915(e).  Section 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  Thus, the court has a gatekeeping responsibility to determine that a complaint may be properly maintained in this district before it may permit a plaintiff to proceed with an action *in forma pauperis*. *See id.*

In deciding whether a complaint states a colorable claim a court must extend a certain measure of deference towards *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and

extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (1983).  There is, nonetheless, an obligation on the part of the court to determine that a claim is not frivolous before permitting a plaintiff to proceed.  *See Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (district court may dismiss frivolous complaint *sua sponte* notwithstanding fact the plaintiff has paid statutory filing fee); *Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (district court has power to dismiss case *sua sponte* for failure to state a claim).

"Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.'"  *Aguilar v. United States*, Nos. 3:99-MC-304, 3:99-MC-408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (Burns J.) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 1831 (1989) and *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir.1995) ("[T]he decision that a complaint is based on an indisputably meritless legal

theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").[3]

When reviewing a complaint under section 1915(e), the court may also look to the Federal Rules of Civil Procedure.  Federal Rules of Civil Procedure 8 provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief [.]"  Fed.R.Civ.P. 8(a)(2).  The purpose of Rule 8 "'is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense.'"  *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C.1977))) (other citation omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual

---

[3]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct.1955).  Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. Rule Civ. Proc. 8(a)(2)).

Upon careful review of plaintiff's complaint in light of the foregoing standards, I recommend that it be dismissed for several reasons.

C.    Analysis of Plaintiff's Complaint

At the outset, plaintiff alleges that jurisdiction is conferred upon the court under 29 U.S.C. § 626(c)(1).  That provision, which is part of the Age Discrimination in Employment Act ("ADEA"), appears to have no relevance

to this lawsuit.[4]  Moreover, though providing for a civil action under the ADEA, section 626(c)(1) does not specifically confer subject matter jurisdiction over those claims upon the court.

The subject matter jurisdiction of the federal district courts is limited, and is set forth generally in 28 U.S.C. §§ 1331 and 1332.  Under these statutes, federal jurisdiction is available only when a federal question is presented, or when the parties are of diverse citizenship and the amount in question exceeds $75,000.  It is well established that the court may raise the question of jurisdiction *sua sponte*, and that where jurisdiction is lacking, "dismissal is mandatory."  *United Food & Commercial Workers Union, Local 919, AFL-CIO v. Centermark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir.1994); *see also* Fed.R.Civ.P. 12(h)(3).

---

[4]     Section 626(c)(1) provides,

> Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: Provided, That the right of any person to bring such action shall terminate upon the commencement of an action by the Equal Employment Opportunity Commission to enforce the right of such employee under this chapter.

29 U.S.C. § 626(c)(1).

Section 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The existence of a federal question is governed by the "well-pleaded complaint" rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.  *Id.*   A well-pleaded complaint presents a federal question where it "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on a resolution of a substantial question of federal law."  *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9, 103 S. Ct. 2841, 2846 (1983).

Jurisdiction over the United States and its agencies exists only where it has waived its sovereign immunity by statute.  *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260, 119 S. Ct. 687, 690 (1999); *Presidential Gardens Assocs. v. United States ex rel. Sec'y of HUD*, 175 F.3d 132, 139 (2d Cir. 1999).  Under the Tucker Act, 28 U.S.C. § 1491, the United States has waived its sovereign immunity with respect to

11

breach of contract claims.[5]  *Spinale and G & T Terminal Packaging Co.,
Inc. v. United States Dep't of Agric.*, No. 05 Civ. 9294(KMV), 2007 WL
747803, at *2 (S.D.N.Y. 2007).  For claims exceeding $10,000.00,
however, "the Tucker Act vests exclusive jurisdiction in the Court of
Federal Claims."  *Id.* (citing 28 U.S.C. § 1346(a)(2)); *see also Brazos Elec.
Power Coop. v. United States Dep't Agric.*, 144 F.3d 784, 787 (Fed. Cir.
1998).  Though the Tucker Act expressly excludes cases sounding in tort
from its limited grant of jurisdiction to the Federal Court of Claims, that
court does have jurisdiction "'where a tort claim stems from a breach of
contract, the cause of action is ultimately one arising in contract, and thus

---

[5]     The Tucker Act provides, in relevant part, that

> [t]he United States Court of Federal Claims shall have
> jurisdiction to render judgment upon any claim against the
> United States founded either upon the Constitution, or any
> Act of Congress or any regulation of an executive
> department, or upon any express or implied contract with
> the United States, or for liquidated or unliquidated damages
> in cases not sounding in tort. For the purpose of this
> paragraph, an express or implied contract with the Army
> and Air Force Exchange Service, Navy Exchanges, Marine
> Corps Exchanges, Coast Guard Exchanges, or Exchange
> Councils of the National Aeronautics and Space
> Administration shall be considered an express or implied
> contract with the United States.

28 U.S.C. § 1491(a)(1).

is properly within the exclusive jurisdiction of the [United States] Court of Federal Claims.'" *Kenney Orthopedic, LLC v. United States*, 88 Fed. Cl. 688, 703-04 (Fed. Cl. Aug. 17, 2009) (quoting *Awad v. United States*, 301 F.3d 1367, 1372 (Fed. Cir.2002)) and *Hall v. United States*, 69 Fed. Cl. 51, 57 (Fed. Cl. Oct. 31, 2005) (holding that it is "well established" that where a tort claim arises from a breach of contract, the cause of action is properly within the United States Court of Federal Claims' jurisdiction)).

Here, plaintiff asserts breach of contract, intentional breach of contract, and tortious interference with contract claims. The court's subject matter jurisdiction over plaintiff's contract claims, however, is not evident from the face of the complaint. Though generally demanding compensatory and punitive damages, nowhere does plaintiff's complaint specify the amount of damages claimed. Indeed, plaintiff's complaint fails to identify the terms of his alleged contract with the USDA, it does not clearly identify how the contract was breached, and the alleged injury plaintiff sustained is not readily apparent. Plaintiff does allege that he invested at least $20,980.00 in the development of a hardwood tree forest and that during the 29-month period that the parties performed under the terms of their agreement, he received cost sharing reimbursements in

13

excess of $14,000.  Based upon the allegations in his complaint, it thus

seems likely that the damages that plaintiff is claiming are in excess of

$10,000, and that this court therefore lacks jurisdiction over all of plaintiff's

contract claims.  Because plaintiff has failed to show that this court has

subject matter over his contract claims, I recommend they be dismissed.

Turning to plaintiff's claims for malfeasance, fraud, and

misrepresentation, with certain exceptions the Federal Tort Claims Act

("FTCA"), 28 U.S.C. §§1346(b), 2671-2680, waives the sovereign

immunity of the United States with respect to tort claims.  *See Williams v.*

*Metro. Det. Ctr.,* 418 F. Supp. 2d 96, 102 (E.D.N.Y. 2005).  By its express

term, the FTCA does not apply to "[a]ny claim arising out of assault,

battery, false imprisonment, false arrest, malicious prosecution, abuse of

process, libel, slander, misrepresentation, deceit, or interference with

contract right. . . ."  28 U.S.C. § 2680(h); *see also Balfour Land Co., L.P.*

*v. United States*, No. 7:08-cv-34, 2009 WL 1796068, at *9 (M.D.Ga. Jun.

22, 2009).  Additionally, "[p]rior to bringing an action, the FTCA requires

that a claimant file an administrative claim with the appropriate federal

agency and that the claim be denied."  *Id.* (citing 28 U.S.C. § 2675(a)).

"This requirement is jurisdictional and cannot be waived."  *Id.* (citing

14

*Keene Corp. v. United States*, 700 F.2d 836, 841 (2d Cir. 1983)); *Casaburi v. United States Dep't of Agric.*, No. 97-CV-1439, 1998 WL 887278, at * 2 (N.D.N.Y. Dec. 11, 1998) (McCurn, S.J.).

In the first instance, plaintiff does not allege that he first presented a claim to the USDA for the damages he now seeking by way of this lawsuit. In the event that he has failed to do so, the court is precluded from exercising jurisdiction over any of plaintiff's tort claims asserted under the FTCA.[6] *Dowdy v. Hercules*, No. 07-CIV-2488(EVEN)(LB), 2010 WL 169624, at *5 (E.D.N.Y. Jan. 15, 2010).  Furthermore, it seems clear that with regard to plaintiff's claims for misrepresentation, fraud, and intentional interference with contract, this court lacks jurisdiction.  *Spinale and G & T Terminal Packaging*, 2007 WL 747803, at *1; *Balfour Land Co.*, 2009 WL 1796068, at *9-10.  For these reasons, I recommend that plaintiff's claims for misrepresentation, fraud, and intentional interference with contract be dismissed with prejudice, and insofar as plaintiff's complaint can be interpreted to allege federal tort claims that are within

---

[6]    The court cannot discern from plaintiff's complaint when the tortious conduct is alleged to have occurred.  Plaintiff is advised, however, that "under the FTCA, '[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues. . ..'" *Dowdy*, 2010 WL 169624, at * 5 (quoting 28 U.S.C. § 2401(b)).

the court's jurisdiction, that those claims be dismissed for failure to state a cause of action, with leave to replead.[7]

Additionally, the sovereign immunity of the United States extends to its agencies, and in favor of is officials sued for damages in their official capacities when the essence of the claim involved seeks recovery from the government as the real party in interest. *Schein v. United States*, 352 F. Supp. 182, 185 (E.D.N.Y. 1972). "The FTCA makes a lawsuit against the United States itself the exclusive remedy for common law tort actions against federal agencies or employees acting on behalf of the government." *Dowdy*, 2010 WL 169624, at * 4 (citing cases). In other words, only the United States can be sued under the FTCA, and neither its agencies nor its employees are proper defendants. *Bazuaye v. United States*, No. 06 Civ. 8259(DAB), 2009 WL 210702, at *6 (S.D.N.Y. Jan. 27, 2009) (citing cases). As a result, plaintiff's claims against the USDA, including the Farm Service Agency, Natural Resource Conservation Service and the Commodity Credit Corporation, and those against the

---

[7]     To the extent that when liberally construed plaintiff's complaint may be interpreted to allege a claim for conversion, he must show that his claim was first made to the USDA. *Casaburi*, 1998 WL 887278, at *2. Any cause of action for harassment fails to state a plausible claim since the allegations in plaintiff's complaint fail to show that he was verbally abused, physically threatened, publicly humiliated, falsely accused of criminal or heinous misconduct, or other conduct contrary to public policy. *Stuto v. Fleishman*, 164 F.3d 920, 828-29 (2d Cir. 1999).

individual defendants in their official capacities should also be dismissed for lack of subject matter jurisdiction.[8]  *Dowdy*, 2010 WL 169624, at * 4.

    D.   <u>Leave to Amend</u>

Generally, when a district court dismisses a *pro se* action *sua sponte*, the plaintiff should be allowed to amend his or her complaint.  *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir.1999). Affording plaintiff the deference to which he is entitled as a *pro se* litigant, I cannot conclude with certainty that plaintiff cannot state a claim within this court's jurisdiction under either the Tucker Act or the FTCA. Accordingly, I recommend that in the event his computer is dismissed, plaintiff be permitted to amend his complaint in effort to state plausible breach of contract and federal tort claims against the United States.

In the event that leave to amend is granted and plaintiff chooses to avail himself of that opportunity, he is advised that any such amended complaint, which will supersede and replace in its entirety the previous

---

[8]    The complaint does not specify whether plaintiff's claims against the individual defendants are in their individual or official capacities.  However, since the complaint does not allege any common law tort committed by any individual defendant that allegedly occurred separate and apart from acts or omissions occurring within the scope of their employment with the USDA, Farm Service Agency, Natural Resource Conservation Service, or the Commodity Credit Corporation, it appears that plaintiff's claims are asserted against them solely in their official capacities.  As was previously discussed, those individuals are therefore not properly named as defendants in this lawsuit.

complaint filed by plaintiff, *see Harris v. City of N.Y.*, 186 F.3d 243, 249 (2d Cir. 1999) (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)); Fed. R. Civ. P. 10(a), must contain a caption that clearly identifies, by name, each individual or entity that plaintiff is suing in the present lawsuit, and must bear the case number assigned to this action.  Significantly, the body of plaintiff's complaint must contain sequentially numbered paragraphs containing only one act of misconduct per paragraph.  Fed. R. Civ. P. 10(b).  I will further recommend that unless plaintiff files such an amended complaint within thirty days from the date of the filing of any decision and order adopting my recommendation in full, his complaint be dismissed without further order of the court.

IV.    CONCLUSION

       While plaintiff's complaint includes a relatively detailed recitation of the salient facts, it is difficult to discern from those allegations any basis for plaintiff's claims.  Even when broadly construing plaintiff's complaint and affording him the special leniency to which he is entitled as a *pro se* litigant, the court has not identified a plausible claim within its jurisdiction. Moreover, with respect to plaintiff's claims for misrepresentation, fraud, and intentional interference with contract, as well as those against the

named agencies and individual defendants, it is quite apparent that the

court lacks subject matter jurisdiction.  Nonetheless, at this early juncture,

I am unable to conclude with certainty that if given the opportunity plaintiff

would not be able to state a viable claim under either the Tucker Act or the

FTCA.  For all of the foregoing reasons, it is therefore hereby respectfully

RECOMMENDED that plaintiff's complaint be DISMISSED in its

entirety, with prejudice as to plaintiff's claims for misrepresentation, fraud,

and intentional interference with contract under the FTCA, and those

against the named agencies and individual defendants, and otherwise

with leave to file an amended complaint within thirty days of any decision

and order adopting my recommendation in full, and that upon his failure to

do so that the clerk dismiss the action without further order of the court.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report.  Such objections must be filed

with the clerk of the court within FOURTEEN days of service of this report.

 FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d),

72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that plaintiff's application to proceed *in forma*

*pauperis* (Dkt. No. 2) is GRANTED; and it is further,

ORDERED that the clerk of the court serve a copy of this report,

recommendation, and order upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      May 2, 2012
            Syracuse, NY



Not Reported in F.Supp.2d, 2007 WL 604936 (N.D.Fla.), 20 Fla. L. Weekly Fed. D 560

(Cite as: 2007 WL 604936 (N.D.Fla.))

C

United States District Court, N.D. Florida,

Gainesville Division.
PARK NATIONAL BANK, as successor in interest to
Regency Savings Bank, Appellant,
v.
UNIVERSITY CENTRE HOTEL, INC., Appellee.
No. 1:06-cv-00077-MP-AK.

Feb. 22, 2007.

Steven M. Berman, Berman PLC, Tampa, FL, for
Appellant.

Carl Edwin Rude, Jr., C. Edwin Rude PA, Tallahassee,
FL, for Appellee.

### ORDER

MAURICE M. PAUL, Senior District Judge.

*1 This matter is before the Court on appeal, pursuant
to 28 U.S.C. § 158(a), from the final order of the United
States Bankruptcy Court for the Northern District of
Florida, Gainesville Division (the "Bankruptcy Court"),
denying Regency Savings Bank's ("Regency") application
for allowance of administrative claim. Appellant Park
National Bank ("Park National" or the "Appellant"), as
successor in interest to Regency, appeals the Order of the
Bankruptcy Court denying its Motion to Assess Legal
Fees and Costs against University Centre Hotel Inc.
("UCH" or the "Debtor") and its Application for
Allowance of Administrative Claim pursuant to 11 U.S.C.
§ 503(b)(1)(A). Oral arguments on this matter were heard
on October 19, 2006.

Because this Court functions as an appellate court in
reviewing the decision of the Bankruptcy Court, three
standards of review apply. First, because no independent
fact finding occurs at the appellate level, the Bankruptcy
Court's factual findings are reviewed under the clearly
erroneous standard. Second, all determinations of law by
the Bankruptcy Court are reviewed de novo. Finally, the
Bankruptcy Court's decision whether to award

administrative expense priority pursuant to 11 U.S.C. §
503 is reviewed under the abuse of discretion standard.
"Orders implicating the equitable discretion of the
bankruptcy court in directing immediate payment of an
administrative expense are reviewable for an abuse of
discretion." In re Colortex Industries, Inc., 19 F.3d 1371,
1374 (11th Cir.1994). See also In re Tama Beef Packing,
Inc., 290 B.R. 90 (B.A.P. 8th Cir.2003), appeal dismissed,
92 Fed. Appx. 368 (8th Cir.2004). A bankruptcy court
abuses its discretion when its ruling is founded on an error
of law or on misapplication of the law to the facts. "The
question is not how reviewing court would have ruled, but
whether reasonable person could agree with the
bankruptcy court's decision." In re Eagle-Picher
Industries, Inc., 285 F.3d 522, 529, 2002 Fed. Appx.
0112P (6th Cir.2002). Because the Bankruptcy Court's
decision is supported by the law and is not an abuse of
discretion, it is affirmed.

### I. Background

This case arose from a transaction on January 20,
2000, when University Centre Hotel, Inc. and Lido Bay
Resort, LLC, entered into loan agreement with Southern
Pacific Bank (the predecessor in interest to Regency
Savings Bank and Park National Bank), and executed a
Note for $7,300,000. Both UCH and Lido Bay are
companies owned and controlled by Anthony Liuzzo. As
security for the Note, both companies delivered a
mortgage agreement to the Lender on property throughout
Florida, as well as an assignment of rents. Finally,
Anthony Liuzzo, owner of both companies, executed an
unconditional Guarantee for the Note. Both the Note and
the Guarantee contained contractual provisions for the
recovery of prevailing party attorney's fees and costs.
After UCH initially defaulted on the loan, it filed its
voluntary Chapter 11 petition on October 18, 2002. Before
the Note matured, Southern Pacific Bank stipulated with
UCH to pay the default interest at the rate of 25% percent
per annum in exchange for a pay-down of $3,000,000. On
February 1, 2003, the Note matured, and UCH and Luizzo
defaulted by failing to pay their obligations under the
Note. After the property in Gainesville that secured the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 604936 (N.D.Fla.), 20 Fla. L. Weekly Fed. D 560

(Cite as: 2007 WL 604936 (N.D.Fla.))

Note was sold to Shands Healthcare, leaving a deficit in the loan, Regency, which had acquired the Note, filed an action in the Circuit Court of the Eighth Judicial Circuit against Luizzo as guarantor for his refusal to pay the deficiency. The Debtors, UCH and Lido Bay, were permitted by the Bankruptcy Court to intervene in this state court action to pursue a counterclaim against Regency.

   **\*2** The counterclaim against Regency sought in excess of $20,000,000 for usury, civil remedies for criminal practices act violation, tortious interference, abuse of process, and breach of fiduciary duty. The state court found in favor of Regency on the breach of guarantee and found against the Debtors and Guarantor on each counterclaim. This decision is currently on appeal to the First District Court of Appeal. The state court decision found the amount of money owed Regency was $330,805.42 for interest and late fees, $149,506.59 for legal fees prior to June 20, 2003, and $630,022.76 for legal fees from July 1, 2003 to December 29, 2005. The decision then stated: "By virtue of the Guarantee, Anthony Luizzo owes the above sums to Plaintiff. Therefore, it is hereby ORDERED AND ADJUDGED that Plaintiff Regency Savings Bank recover from Defendant Anthony Luizzo ... the sum of $1,110,334.77." Doc. 10, ex. # 6 at 11.

## II. The Bankruptcy Court's Order

   After the state court entered judgment, Regency filed its Motion to Assess Legal Fees and Costs and Application for Allowance of Administrative Claim with the Bankruptcy Court on January 11, 2006. The Administrative Claim Application requested fees to be assessed against UCH in the amount of $316,002.58, and also requested that such fees be treated as an administrative expense of the Debtor pursuant to 11 U.S.C. § 503 because the fees were incurred as a result of the Debtor's unsuccessful pursuit of post-petition litigation. The Bankruptcy Court denied Regency's Administrative Claim Application, stating that: "Since [the] State Court did not award attorney's fees against the debtor for prosecution of the action, they are not an obligation of the debtor estate and accordingly will not be allowed [as] an administrative expense of this estate." Doc. 10, ex. # 8 at 3. The basis for this denial was that the

state court's judgment for money damages "is only against Anthony Liuzzo, not the debtor in this case." *Id.* Because Mr. Liuzzo, as guarantor, had posted a bond to satisfy the full amount owed while the case was on appeal, the Bankruptcy Court saw no reason to treat Regency's contractually-owed attorney's fees as administrative expenses, which would give Regency first priority over other creditors.

   Since the Bankruptcy Court's order is rather short, the record helps explain many of the issues reflected in the order. During the hearing before the Bankruptcy Court on the Administrative Claim Application, the court was troubled by several aspects of the treating the attorney's fees as administrative expenses. First, the Bankruptcy Court was concerned that the amount that Regency sought to collect as attorney's fees from UCH-$316,002.58-was not related solely to UCH's counterclaim, as two other defendants had also pursued the same counterclaim. "How much of this relates just to the counterclaim by the debtor? ... You're clearly not entitled to $316,000, but you came in asking for it." Doc. 17 at 11. Second, the Bankruptcy Court expressed concern that Regency was trying to collect its fees from UCH even though a bond had been posted by Mr. Luizzo, the initiator of the counterclaim that UCH joined. "[I]f you collect from Mr. Luizzo, he's all you're getting it from. If you take an administrative expense from this estate, you've gutted whatever's left to pay any creditors of this estate. Why should the creditors of this estate completely fund the liability of Mr. Luizzo for attorney's fees?" *Id.* at 13.

   **\*3** Finally, the Bankruptcy Court viewed UCH's role in the counterclaim as different than Mr. Luizzo and Lido Bay: "[I]t seems the debtor was a kind of me too, tag along, just so the issues that were raised by Luizzo and Lido Bay in the state court could also be binding ... and the debtor was tagging along just to get whatever benefits or at least a final adjudication." *Id.* at 20. This raised problems in allocating the state court judgment between the three parties. "What additional expenses were the result of the debtor's actions? ... And I have absolutely no way of coming up with that." *Id.* at 38. At the end of the hearing, the Bankruptcy Court seemed concerned at Regency attempting to collect from UCH when it had a secured bond for the entire amount owed: "Why do we keep on coming back here and arguing over what little is

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 604936 (N.D.Fla.), 20 Fla. L. Weekly Fed. D 560

(Cite as: 2007 WL 604936 (N.D.Fla.))

left in this estate when you have a bond to recover everything you're owed? ... My job is to watch over the creditors of this estate. And the bank is here trying to suck every dollar there is out of this estate." *Id.* at 44.

### III. Review of the Bankruptcy Court's Decision

The central issue on appeal is whether the Bankruptcy Court erred in finding that Regency was not entitled to an administrative expense claim for its legal fees and costs incurred by virtue of UCH's unsuccessful post-petition pursuit of a counterclaim in a state court action against Regency, pursuant to a pre-petition contract between UCH and Regency with a prevailing party fee and cost provision.

#### A. Automatic Stay Under 11 U.S.C. § 362(a)

Park National's chief argument on appeal is that the Bankruptcy Court erred when it based its decision on the lack of a state-court award of fees because such an award would violate the automatic stay provision of the Code. There is no legal support for the position taken by the Bankruptcy Court to wit: that the Bankruptcy Court somehow cannot adjudicate the entitlement to administrative expense priority unless the tribunal handling the underlying litigation enters a judgment for fees and costs against the Debtor. Such a proposition would seem to run counter to the imposition of the automatic stay which precludes the pursuit, litigation and award of a claim for relief as against a Debtor in bankruptcy whether the claim arises from a pre-petition claim or the claim would ultimately be asserted against the Debtor or property of the Debtor.

Doc. 10 at 12-13. Appellant states that both § 362(a)(1) and (a)(3) would prevent the state court from awarding attorney's fees against UCH, and therefore the Bankruptcy Court was the only forum to decide any entitlement to the fees.

Filing a petition for bankruptcy automatically stays "the commencement or continuation ... of a judicial, administrative, or other action or proceeding *against* the debtor." 11 U.S.C. § 362(a)(1) (emphasis added). As the Appellee, UCH, points out, neither the state court judgment nor the Bankruptcy Court's decision even mentions the issue of the automatic stay because the Code

does not apply to actions brought by the debtor. "[A]s the plain language of the statute suggests, and as no less than six circuits have concluded, the Code's automatic stay does not apply to judicial proceedings, such as this suit, that were initiated by the debtor." *Brown v. Armstrong,* 949 F.2d 1007, 1009-10 (8th Cir.1991). In the instant case, because the Appellee intervened in the state court proceeding to pursue a counterclaim against the Appellant, the action was not "against the debtor." "[W]hether an action is 'against the debtor' is determined by examining the debtor's status at the time proceedings were initiated." *Ostano Commerzanstalt v. Telewide Systems, Inc.,* 790 F.2d 206, 207 (2d Cir.1986).

**\*4** Furthermore, any award of attorney's fees against the Appellee by the state court would most likely not be considered acts to obtain possession of or exercise control over "property of the estate" under § 362(a)(3). Judge Posner states:

[T]he automatic stay is inapplicable to suits by the bankrupt ("debtor," as he is now called). This appears from the statutory language, which refers to actions "against the debtor," 11 U.S.C. § 362(a)(1), and to acts to obtain possession of or exercise control over "property of the estate," § 362(a)(3).... There is, in contrast, no policy of preventing persons whom the bankrupt has sued from protecting their legal rights. True, the bankrupt's cause of action is an asset of the estate; but as the defendant in the bankrupt's suit is not, by opposing that suit, seeking to take possession of it, subsection (a)(3) is no more applicable than (a)(1) is.

*Martin-Trigona v. Champion Federal Sav. and Loan Ass'n,* 892 F.2d 575, 577 (7th Cir.1989). Extending this reasoning, because a person sued by a debtor is merely protecting their legal rights by opposing the lawsuit, there is no *act* to take possession of the debtor's property. Any award of fees by a state court would be incident to this protection of rights.

Moreover, the cases cited by Park National itself contradict its position that the state court somehow could not award attorney's fee. See *In re Property Management and Investments, Inc.,* 91 B.R. 170, 171 (Bkrtcy.M.D.Fla.1988) ("At the conclusion of the Circuit

Not Reported in F.Supp.2d, 2007 WL 604936 (N.D.Fla.), 20 Fla. L. Weekly Fed. D 560

(Cite as: 2007 WL 604936 (N.D.Fla.))

Court trial, the jury returned a verdict in favor of Johnson Blakely and judgment was entered against [the Debtor] PMI. The judgment included costs for attorney's fees and expenses."); *see also In re G.I.C. Government Securities, Inc.*, 121 B.R. 647, 649 (Bkrtcy.M . D.Fla.1990) (Bill of Costs against the Debtor considered by the District Court). By engaging in post-petition litigation, UCH subjected itself to the risk of paying prevailing party fees.

It appears that the state court, realizing who would ultimately foot the bill anyway, awarded fees against the guarantor and owner, rather than against his bankrupt businesses. The decision never mentions any issue of an automatic stay as the reason for this award, and the Bankruptcy Court merely decided that because this decision did not create any obligation on the Debtor, no entitlement to fees exists. As the state case is now on appeal to the First District Court of Appeal, that is where the issue of whether UCH ought to have been included in the judgment should be resolved. Therefore, the Bankruptcy Court's decision not to award fees because no judgment debt exists is not in error.

**B. Administrative Claims Under 11 U.S.C. § 503(b)(1)(A)**

The second argument the Appellant raises is that the fees and costs it incurred in defending the Debtor's counterclaims should be allowed as administrative expenses. The allowance of administrative expense claims is governed by 11 U.S.C. § 503, with the subsection relevant to this case being 11 U.S.C. § 503(b)(1)(A), which states:

**\*5** (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including-

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case....

In order for an expense to be allowed as an administrative claim, it must be actual and necessary to the preservation of the debtor's estate and must have been incurred in an effort to benefit the estate as a whole. Section 503 gives priority to creditors who incur costs in

the preservation of a bankrupt business, such as rent or compensation for ongoing, post-petition operations. This encourages parties to conduct business with a post-petition debtor because such administrative claims are accorded the first level of priority and are paid in full before claims in a lower category. The Appellant states that because the Appellee sought $20 million, the litigation was seeking to benefit the estate and therefore its costs should be allowed as administrative expenses.

The use of the word "including" in § 503(b) has allowed courts to grant administrative expense status to expenditures not listed as one of the specific items in the statute, such as attorney's fees. Moreover, use of the word "shall" connotes a mandatory intent. *In re Celotex*, 227 F.3d 1336, 1338 (11th Cir.2000). However, other courts have found that the administrative expense provision must be narrowly construed, as conflicting with general presumption that all of a debtor's limited resources will be equally distributed among its creditors. *See In re Rose*, 347 B.R. 284 (Bankr.S.D.Ohio.2006), *In re Carco Electronics*, 346 B.R. 377 (Bankr.W.D.Pa., 2006).

Under the Bankruptcy Code, only claims arising from post-petition transactions may be granted such priority. However, the Supreme Court case of *Reading Co. v. Brown*, 391 U.S. 471 (1968), greatly expanded the concept of "transaction." In *Reading*, the Court determined that an award of tort damages to victims of a fire caused by the Chapter 11 receiver's negligence was entitled to administrative expense priority, despite the fact that victims did not transact with the receiver, nor did the estate benefit from the event. The Court held that the tort claims arising post-petition were "actual and necessary expenses" of preserving the estate because the statutory objective of the Code was "fairness to all persons having claims against the insolvent." *Id.* at 477, 482, 485. This case can be read as suggesting that involuntary creditors of a debtor who have their loss thrust upon them should have administrative priority out of fairness, despite the plain language of the Code.

**1. Preserving the Estate**

Although greatly expanding the language of the Code, the *Reading* decision reflects the core concern of § 503-equity-with the focus directed on the care and

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 604936 (N.D.Fla.), 20 Fla. L. Weekly Fed. D 560

(Cite as: 2007 WL 604936 (N.D.Fla.))

preservation of estate. This concept of "fairness" permeates the case law dealing with administrative expenses, as such expenses are dealt with on a case-by-case basis. "The central question in determining whether a claim is granted administrative expense priority is whether the third party should be paid at the expense of the debtor's existing unsecured creditors." *In re Ybarra, 424 F.3d 1018, 1025 (9th Cir.2005).* The focus when deciding whether to allow an administrative expense claim is on preventing unjust enrichment of the debtor, and not on compensating a creditor for its loss.

**\*6** Therefore, courts look to any actual benefit to the estate, rather than to any loss sustained by the creditor. *In re Enron Corp., 279 B.R. 695 (Bankr.S.D.N.Y.2002).* The Eleventh Circuit has interpreted § 503(b) to require not only that the expense be "actual" and "necessary," but also that there be a concrete benefit to the debtor's estate. *See In re Subscription Television of Greater Atlanta, 789 F.2d 1530 (11th Cir.1986).* It is not enough that the incurring of an expense secured a potential benefit or maintained right to obtain a future benefit for estate, if estate did not actually make beneficial use of the value received in exchange for incurring the expense. *In re Right Time Foods, Inc., 262 B.R. 882, 884 (Bankr.M.D.Fla.2001).* "Claims arising under § 503(b)(1)(A) are equitable in nature and thus are valued by the amount of postpetition benefit the claimant provides to the estate and not necessarily according to the contract terms underlying the claim." *In re CM Holdings, Inc., 264 B.R. 141 (Bankr.D.Del.2000).*

In the instant case, the Appellant states that because the Debtor pursued a $20 million counterclaim, the Debtor sought to benefit the estate, and therefore the fees incurred opposing the claim should be allowed as administrative expenses. The concern for administrative expenses is the benefit the claimant provides to the estate, not what benefit a debtor seeks. Regency incurred the fees not to preserve or benefit the estate, but to preserve its own interest in the underlying note. "Generally, a creditor's legal fees are not allowable as an administrative expense claim unless the creditor can demonstrate that the legal services provided a benefit to the estate ." *In re Sports Shinko (Florida) Co., Ltd., 333 B.R. 483, 499 (Bkrtcy.M.D.Fla., 2005).*

The decision in *Reading,* however, would allow such expenses to be treated as administrative claims if in the interest of fairness. The Appellant cites two Bankruptcy Court decisions from Judge Paskay that interpreted *Reading* to allow prevailing party fees as administrative expenses:

> There is no question that the suit instituted by the Trustee against E.F. Hutton was an attempt to benefit and preserve a property of the estate. But for the suit commenced by the Trustee, E.F. Hutton would not have incurred these costs. Therefore, this Court is satisfied that these costs are properly chargeable against the estate as costs of administration. The fact that the Trustee was not ultimately successful in the suit against E.F. Hutton does not change this result.

*In re G.I.C. Government Securities, Inc., 121 B.R. 647, 649 (Bkrtcy.M.D.Fla.1990), see also, In re Property Management and Investments, Inc., 91 B.R. 170, 172 (Bkrtcy.M.D.Fla.1988).* This views the party opposing the debtor as an unwilling creditor, much like the tort victims in *Reading,* with equity requiring administrative priority for the legal fees incurred in opposing the debtor's attempt to benefit the estate. In the instant case, the Bankruptcy Court found that equity did not require treating the attorney's fees incurred by Regency as an administrative expense. Because the record reflects that Regency's expenses are secured in full by a bond, and because the amount sought to be recovered from UCH was attributable to two other parties, a reasonable person could agree with the Bankruptcy Court's decision. Therefore, the Bankruptcy Court did not abuse its discretion in denying Park National's administrative claim.

### 2. Pre-petition versus Post-petition Transaction

**\*7** In order for a claim to be given administrative priority under 11 U.S.C. § 503(b)(1)(A), "the actual, necessary costs and expenses of preserving the estate" must be "rendered *after the commencement* of the case." (emphasis added). This is central idea of an administrative expense-encouraging parties to do business with a debtor in bankruptcy proceedings by giving priority to expenses incurred post-petition. The central argument of UCH, and what Appellant Park National calls a "new argument," is

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 604936 (N.D.Fla.), 20 Fla. L. Weekly Fed. D 560

(Cite as: 2007 WL 604936 (N.D.Fla.))

that post-petition legal fees owed by virtue of a pre-petition contract are not entitled to administration priority since they are pre-petition expenses.

The case law of other circuits appear to support the position taken by UCH. See *In re Hemingway Transport, Inc.,* 954 F.2d 1, 5-6 (1st Cir.1992) (holding that attorneys' fee claim of prevailing defendant incurred in defending against Chapter 7 trustee's post-petition action was not entitled to priority payment as the right to attorney fees arose from executed pre-petition contract, and post-petition action did not benefit estate.); *Matter of Jartran,* 732 F.2d 584 (7th Cir.1984) (holding that pre-petition contracts do not trigger administrative expense priority when the debtor's liability was fixed and irrevocable at the time of filing); *In re Abercrombie,* 139 F.3d 755 (9th Cir.1998) (holding that attorneys' fees awarded post-petition in accordance with the debtor's pre-petition contract is not a claim arising out of a post-petition transaction).

Under all these cases, the focus is on whether the contract giving rise to the claim was entered into before or after the bankruptcy petition. This is because "[p]ostpetition contracts may qualify for administrative expense priority, but costs and expenses arising out of prepetition contracts are treated under the Bankruptcy Code as nonprioritized unsecured claims." *Id.* at 757. Under these cases, the duty to pay prevailing party fees was incurred pre-petition, and served as consideration for the contract. The fact that the contingency triggering this duty occurred post-petition does not mean that attorney's fees should receive administrative priority.

Although no Eleventh Circuit authority exists, bankruptcy courts in this circuit have followed the reasoning of the other circuits:

Assuming that the Debtors had an obligation under the [agreement] to reimburse APX for attorneys' fees, that obligation would have been a pre-petition obligation, and ... the fact that the fees were incurred during the post-petition period does not elevate that obligation to the status of an administrative expense. APX can point to no post-petition transaction between the Debtors and APX that would entitle APX to payment of its attorneys' fees.

*In re New Power Co.,* 313 B.R. 496, 506 (Bkrtcy.N.D.Ga.2004). Although not a basis of the Bankruptcy Court's decision, because the record supports the conclusion that the pre-petition contract alone would not justify treating the post-petition attorney's fees as administrative expenses, this provides an independent ground for affirming the judgment of the Bankruptcy Court. See *Bustamante v. Cueva (In re Cueva),* 371 F.3d 232, 236 (5th Cir.2004) (Finding that a court may affirm a bankruptcy court's decision if there are any grounds in the record to support the judgment, even if those grounds were not relied upon by the courts below.)

### IV. Conclusion

**\*8** The Bankruptcy Court did not abuse its discretion by refusing to accord administrative priority to prevailing party fees awarded against Mr. Luizzo but not against the Debtor. Further, the Bankruptcy Court did not misapply the law, because it never suggested that it could not award fees as an administrative expense, but rather that it would not since they were not an obligation of the estate. This was a decision by the Bankruptcy Court that equity did not necessitate treating the expenses incurred by Regency as administrative expenses, and because these expenses were secured by a bond for the entire amount, this decision was not unreasonable. Therefore, the Bankruptcy Court's decision denying administrative expense priority for Regency's legal fees and costs is affirmed. Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

The Order of the Bankruptcy Court denying Regency Savings Bank's motion to compel University Centre Hotel Inc. to pay attorney's fees and costs as administrative expenses pursuant to 11 U.S.C. § 503(b)(1)(A) is affirmed.

DONE AND ORDERED this *22nd* day of February, 2007

N.D.Fla.,2007.

Park Nat. Bank v. University Centre Hotel, Inc.
Not Reported in F.Supp.2d, 2007 WL 604936 (N.D.Fla.), 20 Fla. L. Weekly Fed. D 560

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 604936 (N.D.Fla.), 20 Fla. L. Weekly Fed. D 560

(Cite as: 2007 WL 604936 (N.D.Fla.))


END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))



Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Francisco AGUILAR, Plaintiff,
v.
UNITED STATES OF AMERICA, Defendant.
Nos. 3:99–MC–304 (EBB), 3:99–MC–408 (EBB).

Nov. 8, 1999.
*Dismissal of Plaintiff's Complaints*

BURNS, Senior J.

**\*1** Francisco Aguilar, pro se, seeks leave to proceed in forma pauperis ("IFP") to press two meritless complaints against the government, which is prosecuting related civil forfeiture actions against his properties. Although Aguilar is otherwise financially eligible, the court dismisses these complaints sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B) because the purported claims are frivolous, baseless and irremediable.

*Background*

Would-be plaintiff Aguilar is no stranger to this court. He is currently serving a forty-year sentence for drug trafficking at the federal penitentiary in Leavenworth, Kansas. *See United States v. Tracy,* 12 F.3d 1186, 1189 (2d Cir.1993) (affirming conviction and sentence). In connection with his conviction for narcotics offenses, the government filed civil forfeiture actions pursuant to 21 U.S.C. § 881(a) in 1990 and 1991 against four of Aguilar's Connecticut properties, which have since been sold. With the help of CJA-appointed counsel, Aguilar has vigorously defended each of these four actions, three of which remain pending before this court, and are scheduled for trial in January 2000.[FN1]

> FN1. *See United States v. One Parcel Of Property Located At 2030–32 Main St.,* No. 5:90–cv–544(EBB) (pending); *United States v. One Parcel Of Property Located At 8 Drumlin Rd.,* No. 5:90–cv–545 (EBB) (pending); *United States v. One Parcel Of Property Located At 2034–38 Main St.,* No. 5:90–cv–546(EBB) (pending); *see also United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158(EBB) (closed).

Now Aguilar seeks to take the offensive by filing these purported claims against the government, and serving the current property owners as well as the Assistant United States Attorney who is prosecuting the related forfeiture cases. This court denied without prejudice Aguilar's initial complaint, which was erroneously captioned "United States v. One Parcel Of Property Located At 414 Kings Hwy.," one of the cases already docketed and then pending. *See* Order of June 15, 1999. Upon refiling an amended complaint (the "Amended Complaint") with the appropriate caption, Aguilar also filed a second complaint (the "Second Complaint"), seeking the same relief and asserting essentially the same claims against the government for bringing the other three forfeiture cases. The clerk returned these pleadings because Aguilar failed to complete the IFP forms. *See* Order of August 25, 1999. After Aguilar cured these pleading deficiencies, miscellaneous docket numbers were assigned to the complaints.

In Aguilar's Amended Complaint—the one originally filed against his own property at 414 Kings Highway—Aguilar seeks return of the property, compensatory damages and $100,000,000 in punitive damages "to deter the United States of America from committing a similar Abuse of Power." Aguilar pleads his case in four "Articles," asserting sundry state and federal "constitutional" claims, including conversion, false pretenses, mail fraud, and breach of fiduciary duty. The Amended Complaint also suggests an allegation that the government falsified and deliberately omitted known material facts from its probable cause affidavit in "disregard" of 19 U.S.C. § 1615, the statute outlining the burden of proof in administrative forfeiture proceedings.

The Second Complaint—the one related to the government's seizure of the other three properties—seeks similar equitable and monetary relief, including return of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

the properties, compensation for "suffering," "usurpation," denial of his use and enjoyment of the properties and lost rents, and one billion dollars in punitive damages. Liberally construed, the Second Complaint simply repeats the claims of the Amended Complaint except for one additional allegation: that Aguilar was entitled to, and did not receive, a hearing prior to the seizure and sale of his properties.

*Discussion*

A. *§ 1915(e)(2)(B) Standards*

**\*2** The Prisoner Litigation Reform Act ("PLRA") mandates dismissal of an IFP action if it: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B) (as amended in 1996). Prior to the adoption of the PLRA, district courts had discretion to dismiss frivolous actions; now they are required to do so. *See* Pub.L. 104–134, 110 Stat. 1321 (1996) (making dismissal of frivolous actions mandatory, and also requiring dismissal for failing to state a claim or seeking damages from an immune defendant). Because Aguilar's claims qualify for dismissal under all three of these prongs, the standards for each are set out in turn.

1. *Frivolous or Malicious*

A complaint is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989) (interpreting § 1915(d), later redesignated as § 1915(e)(2)(B)(i), to preclude "not only the inarguable legal conclusion, but also the fanciful factual allegation"). Factual frivolity occurs where "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (quoting *Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1833). Legal frivolity, by contrast, occurs where "the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Livingston,* 141 F.3d at 327 (internal quotes

and citation omitted); *see also Tapia–Ortiz v. Winter,* 185 F.3d 8, 11 (2d Cir.1999) (upholding dismissal as frivolous where "[t]he complaint's conclusory, vague, and general allegations ... d[id] not [ ] suffice to establish" plaintiff's claims).

In addition to frivolous claims, the court must also dismiss any malicious claims, i.e., where "[t]he manifest purpose of appellant's complaint [i]s not to rectify any cognizable harm, but only to harass and disparage." *Tapia–Ortiz,* 185 F.3d at 11.

2. *Failure To State A Claim*

An IFP action must also be dismissed sua sponte if it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see also Star v. Burlington Police Dep't,* 189 F.3d 462, 1999 WL 710235 (2d Cir.1999) (summarily affirming dismissal made pursuant to § 1915(e)(2)(B)(ii) of purported due process challenge that failed to state a claim). As in a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a § 1915(e)(2)(B)(ii) dismissal is warranted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

**\*3** Pro se complaints, such as these, however, must be read broadly, *see Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam), and may not be dismissed "simply because the court finds the plaintiff's allegations unlikely." *Denton v. Hernandez,* 504 U.S. 25, 33, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1982) (construing pre-PLRA complaint as frivolous). Therefore,

a pro se plaintiff who is proceeding in forma pauperis should be afforded the same opportunity as a pro se fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim [under § 1915(e)(2)(B)(ii) ], unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.

*Gomez v. USAA Federal Sav. Bank,* 171 F.3d 794, 796 (2d Cir.1999) (per curiam) (vacating § 1915(e)(2)(B)(ii) dismissal where "the district court did

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

not give th[e] pro se litigant an opportunity to amend his complaint, and because [the court] cannot rule out the possibility that such an amendment will result in a claim being successfully pleaded").

### 3. *Relief Against An Immune Defendant*

Dismissal of an IFP case is also required where plaintiff seeks monetary damages against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); *see also, Spencer v. Doe,* 139 F.3d 107, 111 (2d Cir.1998) (affirming dismissal pursuant to § 1915(e)(2)(B)(iii) of official-capacity claims in § 1983 civil rights action because "the Eleventh Amendment immunizes state officials sued for damages in their official capacity"). Here, even if Aguilar's claims had any merit, the complaints must be dismissed nevertheless because each seeks monetary damages from the United States, which is immune from such relief. *See Presidential Gardens Assocs. v. United States,* 175 F.3d 132, 139 (2d Cir.1999) (noting "[t]he sovereign immunity of the United States may only be waived by federal statute").

### B. *Dismissal Standards Applied*

Aguilar's complaints are devoid of any arguable basis in law or fact. Most of his factual allegations—to the extent they are even comprehensible—are conclusory, vague and baseless. For example, he purports to allege: "The United States of America has misused its power against the Francisco Aguilar's Intangible Rights." (Amended Complaint at 2); and "The United States of America overpassed its bound of its authority and make a tyrannic use of its powers." (Second Complaint at 4). Even the Second Circuit has recognized Aguilar's prior handiwork to be "so indisputably lacking in merit as to be frivolous within the meaning of 28 U.S.C. § 1915(e)." *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 97–6004 (2d Cir. April 23, 1997) (mandate [Doc. No. 167] dismissing appeal of Aguilar's motion to enjoin state default proceedings).

Only two allegations asserted by Aguilar are even arguably actionable: the lack-of-probable-cause argument in the Amended Complaint and the due process claim in the Second Complaint. Both of these, however, must be dismissed because each fails to state a claim for which relief may be granted.

### 1. *Probable Cause*

**\*4** The one potentially cogent legal claim that can be derived from a liberal reading of the Amended Complaint has already been conclusively decided by the court and is therefore barred from relitigation. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158 (denying lack-of-probable-cause argument in motion to dismiss [Doc. No. 64] in 1993, and in motions for summary judgment [Doc. Nos. 55, 96] in 1996). Here again, Aguilar reiterates his allegation that the government's affidavit in support of probable cause was tainted because it failed to disclose that the 414 Kings Highway property was subject to a mortgage held by People's Bank, and therefore could not have been purchased with funds traceable to drug sales.

After the government voluntarily dismissed that forfeiture action, this court initially ordered the sale proceeds of the property disbursed to Aguilar. *See id.,* Order of Oct. 25, 1996 [Doc. No. 151]. The bank appealed the order and, during the pendency of the appeal, secured a default judgment in state court against Aguilar. *See People's Bank v. Aguilar,* No. CV–96–0337761–S (Conn.Super.Ct.1997). On the Bank's appeal from this court's disbursal of proceeds to Aguilar, the Second Circuit reversed and remanded. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* 128 F.3d 125, 128 (2d Cir.1997). On remand, in accordance with the Second Circuit mandate, this court disbursed the proceeds from the sale of 414 Kings Highway to the bank in partial satisfaction of Aguilar's debt owed on the defaulted mortgage. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158, 1999 WL 301704 (D.Conn. May 11, 1999).

Because the lack-of-probable-cause claim, perfunctorily adverted to in Aguilar's otherwise meritless Amended Complaint, has already been addressed in the *414 Kings Highway* forfeiture case, the court will not consider it again. As such, it must be dismissed because it fails to state a claim for which this court could grant further relief.

### 2. *Due Process*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

In addition to his now-stale probable cause allegation about 414 Kings Highway, Aguilar claims in the Second Complaint that he was wrongfully denied a hearing prior to the seizure and sale of the other three properties. However, the constitutional right to a preseizure hearing in civil forfeiture proceedings was not recognized until 1993, two years after the seizure in this case. *See United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (holding that Fifth Amendment Due Process protections apply to civil forfeiture proceedings against real property). Even if such due process protections applied retroactively, Aguilar's challenge to the sale of the properties would lack merit because exigent circumstances required their interlocutory sale.

In civil forfeiture proceedings "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture." *Id.* at 62, 114 S.Ct. at 505; *see also United States v. One Parcel Of Property Located At 194 Quaker Farms Rd.,* 85 F.3d 985, 988 (2d Cir.1996) ("[a]bsent exigent circumstances, a hearing, with notice to record owners, is held before seizure."). "To establish exigent circumstances, the Government must show that less restrictive measures—i.e., a lis pendens, restraining order, or bond—would not suffice to protect the Government's interest in preventing the sale, destruction, or continued unlawful use of the real property." *Id.* at 62, 114 S.Ct. at 505.

**\*5** Aguilar's properties addressed in the Second Complaint were seized because there was probable cause that each had been used to facilitate the offenses for which he was convicted. *See* 21 U.S.C. § 881(a)(7) (1999). This civil forfeiture statute authorizes interlocutory sale of seized properties by two methods, which are incorporated by reference into the statute. *See* 21 U.S.C. § 881(b) (authorizing seizure of property subject to civil forfeiture upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims; 21 U.S.C. § 881(d) (authorizing seizure and summary sale governed by the customs laws codified in the Tariff Act of 1930, 19 U.S.C. §§ 1602–1619). Though the source of authority differs, the standards for sale under each are virtually indistinguishable.

Rule E(9)(b) of the Maritime Rules permits the interlocutory sale of seized property if such property

is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action, or if the expenses of keeping the property is [sic] excessive or disproportionate, or if there is unreasonable delay in securing the release of property....

Supplemental Rule for Certain Admiralty and Maritime Claims E(9)(b). Section 1612(a) of the customs laws, by contrast, provides for seizure and summary sale whenever it appears that such property

is liable to perish or to waste or to be greatly reduced in value by keeping, or that the expense of keeping the same is disproportionate to the value thereof....
19 U.S.C. § 1612(a) (1999).

Here, the Chief Deputy United States Marshal certified that the properties located at both 2030–32 Main St., Bridgeport (No. 5:90–cv–544), and 8 Drumlin Rd., Westport (No. 5:90–cv–545), were abandoned and therefore subject to vandalism, deterioration and depreciation. *See* 2/20/91 Declaration in Support of Motion for Interlocutory Sale [Doc. Nos. 28 (5:90–cv–544), 31 (5:90–cv–545) ] at ¶¶ 4, 5. The marshal also certified that the mortgage obligations exceeded by over $ 1,000 per month the rental income of the 2034–38 Main St., Bridgeport (No. 5:90–cv–546), property, which was several months in arrears and had little or no equity. *See* 2/21/90 Declaration in Support of Motion for Interlocutory Sale [Doc. No. 27 (5:90–cv–546) ] at ¶ 4. This court found these reasons sufficiently exigent to order the interlocutory sales. *See* 8/1/90 Order for an Interlocutory Sale [Doc. Nos. 34 (5:90–cv–544), 50 (5:90–cv–545), 31 (5:90–cv–546)]. Interlocutory sale was thus warranted under both Rule E(9)(b) and § 1612(a) because the two abandoned properties were liable to deteriorate or lose value and the mortgage liabilities of the rented property were disproportionate in comparison to its value. *Cf. United States v. Esposito,* 970 F.2d 1156, 1161 (2d Cir.1992) (vacating order of interlocutory sale of forfeited home where "there was no finding that t[he amount expended for maintenance and repairs] was

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

**\*6** Aguilar's claim that he was wrongfully denied an opportunity to be heard prior to the sale of his properties is therefore not a cognizable due process challenge because the exigency of the properties' abandonment and disproportionate cost of upkeep required their interlocutory sale. Thus, sua sponte dismissal is warranted because Aguilar's due process claim fails to state a remediable cause of action.

3. *Other Claims*

The remainder of Aguilar's claims are frivolous and can be disposed of readily. To the extent Aguilar's claim invoking 19 U.S.C. § 1615 can be construed as challenging the constitutionality of shifting the burden to the claimant upon the government's showing of probable cause, the Second Circuit has "h[e]ld that it does not violate due process to place the burden of proving an innocent owner affirmative defense on the claimant." *194 Quaker Farms Rd.,* 85 F.3d at 987. In addition, the tort claims for false pretenses and conversion are not actionable as these are intentional torts to which the limited waiver of sovereign immunity of the Federal Tort Claims Act ("FTCA") is inapplicable. *See* 28 U.S.C. § 2680(h); *see also Bernard v. United States,* 25 F.3d 98, 104 (2d Cir.1994) ("the FTCA does not authorize suits for intentional torts based on the actions of Government prosecutors"). Furthermore, because the United States government is not a fiduciary and owes no associated duties to Aguilar, his breach of fiduciary duty allegation against the government fails to state a claim. Finally, Aguilar also fails to state a valid mail fraud claim as that criminal code provision, 18 U.S.C. § 1341, may only be prosecuted by the government, not against it.

*Conclusion*

For the foregoing reasons, Aguilar's complaints [Nos. 3:99–mc–304 and 3:99–mc–408] are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) because they present frivolous allegations, none of which state a cognizable claim, and seek monetary relief from an immune defendant. Because the court cannot definitively rule out the possibility that amendment to the pleadings might result in an actionable claim, *see Gomez,* 171 F.3d at 796,

these dismissals are made without prejudice and may be replead after the conclusion of the related forfeiture proceedings.

D.Conn.,1999.

Aguilar v. U.S.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 1998 WL 832708 (S.D.N.Y.)

(Cite as: 1998 WL 832708 (S.D.N.Y.))

C

Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Theodore HUDSON, Plaintiff,
v.
Christopher ARTUZ, Warden Philip Coombe,
Commissioner Sergeant Ambrosino Doctor Manion
Defendants.
No. 95 CIV. 4768(JSR).

Nov. 30, 1998.

Mr. Theodore Hudson, Great Meadow Correctional Facility, Comstock.

Alfred A. Delicata, Esq., Assistant Attorney General, New York.

MEMORANDUM AND ORDER

BUCHWALD, Magistrate J.

**\*1** Plaintiff Theodore Hudson filed this *pro se* action pursuant to 42 U.S.C. § 1983 on April 26, 1995. Plaintiff's complaint alleges defendants violated his constitutional rights while he was an inmate at Green Haven Correctional Facility.[FN1] Plaintiff's complaint was dismissed *sua sponte* by Judge Thomas P. Griesa on June 26, 1995 pursuant to 28 U.S.C. § 1915(d). On September 26, 1995, the Second Circuit Court of Appeals vacated the judgment and remanded the case to the district court for further proceedings.

> FN1. Plaintiff is presently incarcerated at Sullivan Correctional Facility.

The case was reassigned to Judge Barbara S. Jones on January 31, 1996. Defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(c) on November 25, 1996. Thereafter, the case was reassigned to Judge Jed S. Rakoff on February 26, 1997. On February 26, 1998, Judge Rakoff granted defendants' motion to dismiss, but vacated the judgment on April 10, 1998 in response to plaintiff's motion for reconsideration in which plaintiff

claimed that he never received defendants' motion to dismiss.

By Judge Rakoff's Order dated April 14, 1998, this case was referred to me for general pretrial purposes and for a Report and Recommendation on any dispositive motion. Presently pending is defendants' renewed motion to dismiss. Plaintiff filed a reply on July 6, 1998. For the reasons discussed below, plaintiff's complaint is dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this order.

FACTS

Plaintiff alleges that he was assaulted by four inmates in the Green Haven Correctional Facility mess hall on March 14, 1995. (Complaint at 4.) He alleges that he was struck with a pipe and a fork while in the "pop room" between 6:00 p.m. and 6:30 p.m. (Complaint at 4–5.) Plaintiff contends that the attack left him with 11 stitches in his head, chronic headaches, nightmares, and pain in his arm, shoulder, and back. (*Id.*) Plaintiff also states that Sergeant Ambrosino "failed to secure [the] area and separate" him from his attackers. (Reply at 5.) Plaintiff's claim against Warden Artuz is that he "fail [sic] to qualify as warden." (Complaint at 4.) Plaintiff names Commissioner Coombes as a defendant, alleging Coombes "fail [sic] to appoint a qualified warden over security." (Amended Complaint at 5.) Plaintiff further alleges that Dr. Manion refused to give him pain medication. (Complaint at 5.) Plaintiff seeks to "prevent violent crimes" and demands $6,000,000 in damages. (Amended Complaint at 5.)

Defendants moved to dismiss the complaint, arguing that: (1) the Eleventh Amendment bars suit against state defendants for money damages; (2) the plaintiff's allegations fail to state a claim for a constitutional violation; (3) the defendants are qualifiedly immune from damages; and (4) plaintiff must exhaust his administrative remedies before bringing this suit.

DISCUSSION

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 832708 (S.D.N.Y.)

(Cite as: 1998 WL 832708 (S.D.N.Y.))

I find that plaintiff's complaint runs afoul of Rules 8 and 10 of the Federal Rules of Civil Procedure and dismiss the complaint without prejudice and with leave to amend. Federal Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." Powell v. Marine Midland Bank, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (quoting Brown v. Califano, 75 F.R.D. 497, 498 (D.C.1977)); see Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir.1988) (stating that the "principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial").

*2 Rule 10 of the Federal Rules of Civil Procedure requires, inter alia, that the allegations in a plaintiff's complaint be made in numbered paragraphs, each of which should recite, as far as practicable, only a single set of circumstances. Moore's Federal Practice, Vol. 2A, ¶ 10.03 (1996). Rule 10 also requires that each claim upon which plaintiff seeks relief be founded upon a separate transaction or occurrence. Id.FN2 The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading." Sandler v. Capanna, 92 Civ. 4838, 1992 WL 392597, *3 (E.D.Pa. Dec.17, 1992) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1323 at 735 (1990)).

FN2. Rule 10 states:

(b) Paragraphs; Separate Statements. All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.

A complaint that fails to comply with these pleading rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of" a plaintiff's claims. Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y.1996). It may therefore be dismissed by the court. Id.; see also Salahuddin v. Cuomo, 861 F.2d at 42 ("When a complaint does not comply with the requirement that it be short and plain, the court has the power to, on its own initiative, ... dismiss the complaint"). Dismissal, however, is "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. In those cases in which the court dismisses a pro se complaint for failure to comply with Rule 8, it should give the plaintiff leave to amend when the complaint states a claim that is on its face nonfrivolous. Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir.1995).

In determining whether a nonfrivolous claim is stated, the complaint's allegations are taken as true, and the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v.. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint of a pro se litigant is to be liberally construed in his favor when determining whether he has stated a meritorious claim. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Even if it is difficult to determine the actual substance of the plaintiff's complaint, outright dismissal without leave to amend the complaint is generally disfavored as an abuse of discretion. See Salahuddin, 861 F.2d at 42–42; see also Doe v. City of New York, No. 97 Civ. 420, 1997 WL 124214, at *2 (E.D.N.Y. Mar.12, 1997).

Here, plaintiff's pro se complaint fails to satisfy the requirements of Federal Rules 8 and 10. The complaint is often illegible and largely incomprehensible, scattering what appear to be allegations specific to plaintiff within a forest of headnotes copied from prior opinions. Defendants have answered with a boilerplate brief, which is perhaps all a defendant can do when faced with such a complaint. The Court is left with an insurmountable burden in attempting to make a reasoned ruling on such

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 832708 (S.D.N.Y.)

(Cite as: 1998 WL 832708 (S.D.N.Y.))

muddled pleadings.

**\*3** Although plaintiff's complaint is substantially incomprehensible, it appears to plead at least some claims that cannot be termed frivolous on their face. For example, plaintiff clearly alleges that inmates assaulted him and that Dr. Manion refused to provide him medical attention. He also appears to assert that Sergeant Ambrosino failed to protect him from the attack or take steps to prevent future attacks. (Plaintiff's Reply at 5). It is well established that an inmate's constitutional rights are violated when prison officials act with deliberate indifference to his safety or with intent to cause him harm. *Hendricks v. Coughlin,* 942 F.2d 109 (2d Cir.1991). It is similarly well established that an inmate's constitutional rights are violated when a prison doctor denies his request for medical care with deliberate indifference to the inmate's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Hathaway v. Coughlin,* 37 F.3d 63 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). Although plaintiff provides few facts to support his allegations, I disagree with defendants' assertion that outright dismissal is appropriate because it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Defendant's Memorandum at 5 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Because plaintiff's complaint does not comply with Rules 8 and 10, it is hereby dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this Order. In drafting his second amended complaint, plaintiff is directed to number each paragraph and order the paragraphs chronologically, so that each incident in which he alleges a constitutional violation is described in the order that it occurred. Plaintiff is also directed to specifically describe the actions of each defendant that caused plaintiff harm, and to do so in separate paragraphs for each defendant. Plaintiff's complaint shall contain the facts specific to the incidents plaintiff alleges occurred, and not any facts relating to any case that has been decided previously by a court of law. Plaintiff's complaint shall also contain a clear statement of the relief he seeks in addition to monetary damages.

CONCLUSION

For the reasons set forth above, plaintiff's complaint is dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this Order.

IT IS SO ORDERED.

S.D.N.Y.,1998.

Hudson v. Artuz
Not Reported in F.Supp.2d, 1998 WL 832708 (S.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2007 WL 747803 (S.D.N.Y.)

(Cite as: 2007 WL 747803 (S.D.N.Y.))

**c**

Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Anthony SPINALE and G & T Terminal Packaging Co.,
Inc., Plaintiffs,
v.
UNITED STATES DEPARTMENT OF
AGRICULTURE, Defendant.
No. 05 Civ. 9294(KMW).

March 8, 2007.
*OPINION AND ORDER*

WOOD, J.

**\*1** Plaintiffs are a corporation that buys and sells potatoes, and its president. They filed suit against Defendant United States Department of Agriculture ("USDA") for malfeasance, fraud, and breach of contract relating to the practices of USDA inspectors at the Hunts Point Terminal Market in the Bronx. The USDA moves to dismiss the Complaint for lack of subject-matter jurisdiction and failure to state a claim on which relief can be granted. Fed.R.Civ.P. 12(b)(1), (6). Because the Court concludes that it lacks jurisdiction, the Complaint is dismissed.[FN1]

> FN1. Because the Court concludes that it lacks subject-matter jurisdiction over any of Plaintiffs' claims, it need not consider the USDA's alternative argument that Plaintiffs have failed to state a claim for breach of contract.

*DISCUSSION*

"After [c]onstruing all ambiguities and drawing all inferences in a plaintiff's favor, a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir.2005) (alteration in original) (citations and internal

quotation marks omitted). Plaintiffs must prove subject-matter jurisdiction by a preponderance of the evidence. *Id.*

Subject-matter jurisdiction over the United States and its agencies exists only where the United States has waived its sovereign immunity. *Dep't of the Army v. Blue Fox, Inc.,* 525 U.S. 255, 260 (1999). Sovereign immunity can be waived only by statute. *Presidential Gardens Assocs. v. United States ex rel. Sec'y of HUD,* 175 F.3d 132, 139 (2d Cir.1999). If no statute authorizes Plaintiffs' claims against the USDA, then this Court lacks subject-matter jurisdiction. *See FDIC v. Meyer,* 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature.").

Plaintiffs contend that the first three causes of action in their Complaint, sounding in tort and alleging malfeasance and fraud, are authorized by the Federal Tort Claims Act ("FTCA"). 28 U.S.C. §§ 1346, 2401(b), 2671–2680. This is incorrect. These three causes of action are rooted in allegations of misrepresentation or deceit; they are thus not authorized by the FTCA, which excludes claims "arising out of ... misrepresentation [or] deceit." *Id. § 2680(h).* "[T]he essence of an action for misrepresentation ... is the communication of misinformation on which the recipient relies." *Block v. Neal,* 460 U.S. 289, 296 (1983).

Here, each of Plaintiffs' first three claims is based on alleged misrepresentation by the USDA of the actual state of inspected produce, notwithstanding that Plaintiffs do not use the word "misrepresentation."[FN2] *See United States v. Neustadt,* 366 U.S. 696, 703 (1961) (approving lower court statement, in case defining "misrepresentation" under 28 U.S.C. § 2680(h), that " '[w]e must then look beyond the literal meaning of the language to ascertain the real cause of complaint' " (quoting *Hall v. United States,* 274 F.2d 69, 71 (10th Cir.1959))). Plaintiffs do not distinguish, dispute, or discuss several analogous cases cited by the USDA, in which courts barred claims against the agency for improper inspection of foodstuffs on the ground that the claims were really misrepresentation claims under Section

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 747803 (S.D.N.Y.)

(Cite as: 2007 WL 747803 (S.D.N.Y.))

2680(h). *See Carolinas Cotton Growers Ass'n, Inc. v. United States,* 785 F.2d 1195 (4th Cir.1986) (misrepresentation claim where USDA misgraded cotton); *Rich Prods. Corp. v. United States,* 804 F.Supp. 1270 (E.D.Cal.1992) (same, where USDA improperly inspected fruit); *Forsythe Meats, Inc. v. USDA,* 508 F.Supp. 237 (S.D.N.Y.1981) (same, where USDA wrongly identified plaintiff's meat as contaminated).[FN3]

> **FN2.** The first cause of action, for "malfeasance," claims that the USDA "instructed its inspectors to falsify inspection reports" (Compl.¶ 54) and to reinspect where its initial inspection found grade defects in more than 5% of potatoes (*id.* ¶ 56). The second cause of action, also for "malfeasance," alleges that the USDA "instructed its inspectors not to use the word 'Soft' when describing produce .... caus[ing] the inspection reports to be inaccurate." (*Id.* ¶ 62.) The third cause of action, for fraud, claims that the USDA ordered inspectors to determine if a prior inspection of a produce shipment had been performed and, if so, "to make the inspection similar to the prior inspection or slightly worse." (*Id.* ¶ 70.) Plaintiffs acknowledge that the conduct described in the third cause of action "constitutes the intentional use of *deceit* by dishonest means." (*Id.* ¶ 74 (emphasis added).)

> **FN3.** Although all these cases dealt with allegations of negligent rather than intentional misrepresentation, the distinction is irrelevant for purposes of 28 U.S.C. § 2680(h). The Supreme Court in *Neustadt* made clear that the bar on misrepresentation or deceit claims against the United States extends to intentional and negligent misrepresentations alike. *Neustadt,* 366 U.S. at 702.

**\*2** Plaintiffs argue that their malfeasance and fraud causes of action should not be regarded as misrepresentation claims because (1) "the USDA inspectors did not misstate facts to obtain money, goods or benefits of another to which they were not entitled" and (2) "the Plaintiffs never relied upon the inspection

certificates because Spinale ... knew that the inspection certificates were inaccurate." (Pls.' Mem. of Law in Opp'n 7.) The first objection is irrelevant: the government's misrepresentation need not have been made for the purpose of pecuniary gain, given that Section 2680(h) also bars claims for negligent misrepresentation. *Neustadt,* 366 U.S. at 702. The facts relied upon in the second objection are time-barred by the FTCA's two-year statute of limitations, 28 U.S.C. § 2401(b), given that Plaintiffs acknowledge in their brief that they have been subjected to no inspections (fraudulent or otherwise) since 1999. (Pls.' Mem. of Law in Opp'n 10.) If, as Plaintiffs assert, they knew the certificates were inaccurate at the time of the inspections, then their claim accrued no later than 1999; plaintiff Spinale did not file a claim for damages with the USDA until January 2005. (Compl.¶ 48.)

Plaintiffs' fourth cause of action alleges breach of contract. The United States has waived its immunity to breach of contract suits in the Tucker Act, 28 U.S.C. § 1491.[FN4] However, for claims of more than $10,000, the Tucker Act vests exclusive jurisdiction in the Court of Federal Claims. *See* 28 U.S.C. § 1346(a)(2); *id.* § 1491(a)(1). Because Plaintiffs seek damages of $500,000 on their fourth cause of action (Compl.¶ 82), this Court has no jurisdiction to entertain their claim.

> **FN4.** The Tucker Act provides, in relevant part:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

> 28 U.S.C. § 1491(a)(1).

Plaintiffs incorrectly claim that the Tucker Act bars the Court of Federal Claims from hearing this cause of action. The Act grants the Court of Federal Claims jurisdiction over claims founded "upon any express or implied contract with the United States, *or* for liquidated

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 747803 (S.D.N.Y.)

(Cite as: 2007 WL 747803 (S.D.N.Y.))

or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (emphasis added). Plaintiffs' fourth cause of action is founded upon an express or implied contract with the United States; it therefore falls within the Act's grant of jurisdiction. FN5

> FN5. Plaintiffs' error is grammatical. They assume that the phrase "in cases not sounding in tort" modifies two prepositional phrases: "upon any express or implied contract with the United States" and "for liquidated or unliquidated damages." The word "or" and the comma preceding it, however, show that "in cases not sounding in tort" modifies only the latter phrase.
>
> Plaintiffs' argument that tort and contract claims should not be entertained in separate fora is moot. Plaintiffs' tort claims may not be entertained at all, so no bifurcation will be required.

*CONCLUSION*

    For the reasons stated above, Plaintiffs' Complaint is DISMISSED. The Clerk of Court is directed to close this case. Any pending motions are moot.
   SO ORDERED.

S.D.N.Y.,2007.

Spinale v. U.S. Dept. of Agriculture
Not Reported in F.Supp.2d, 2007 WL 747803 (S.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy, 2009 WL 1796068 (M.D.Ga.)

(Cite as: 2009 WL 1796068 (M.D.Ga.))

C

Only the Westlaw citation is currently available.
United States District Court,

M.D. Georgia,
Valdosta Division.
BALFOUR LAND COMPANY, L.P., Plaintiff,
v.
UNITED STATES of America, United States
Department of Agriculture, and Farm Services Agency,
Defendants.
Civil Action No. 7:08-cv-34 (HL).

June 22, 2009.
West KeySummary**Agriculture 23** 🗝️   **3.2**

**23** Agriculture

   **23k3** Public Aid
      **23k3.2** k. Soil Conservation Incentives and
Payments. Most Cited Cases
   A final administrative decision allowing the
cancellation of a Conservation Reserve Program (CRP)
contract and requiring the landowner to refund all annual
rental payments and liquidated damages was upheld. The
landowner had sold the property, but failed to make the
new owner a successor to the contract within sixty days.
The National Appeals Division (NAD) decision was not
arbitrary or capricious as the agency was not required to
consider equitable relief before canceling the contract.
Farm Service Agency (FSA) was specifically required to
cancel CRP contracts to which a new owner did not
succeed. 7 C.F.R. § 1410.51(b).

James A. Garland, Thomas Heyward Vann, Jr.,
Thomasville, GA, for Plaintiff.

Stewart R. Brown, United States Attorney's Office,
Macon, GA, for Defendants.

**ORDER**

HUGH LAWSON, Senior District Judge.

   **\*1** This matter is before the Court on the
cross-motions for summary judgment of Plaintiff Balfour
Land Company, L.P. and Defendants United States of
America, United States Department of Agriculture, and
Farm Service Agency. [FN1] In its Motion for Summary
Judgment (Doc. 29), Defendants contend that they are
entitled to judgment as a matter of law as to all claims
against them. Plaintiff has countered with its own Motion
for Summary Judgment (Doc. 31), in which it contends it
is entitled to judgment against Defendants as a matter of
law. After review of the pleadings, the discovery and
disclosure materials on file, and the administrative record
of the United States Department of Agriculture National
Appeals Division, the Court denies the motion of Plaintiff
and grants the motion of Defendants.

     FN1. Clara Dunbar, a Farm Service Agency
     employee, was named as a defendant in
     Plaintiff's amended complaint. On May 23, 2008,
     a Notice of Substitution of Party Defendant was
     filed in which the United States was substituted
     under the Westfall Act, 28 U.S.C. § 2679, for
     Ms. Dunbar as a defendant with respect to the
     claims raised against her in the amended
     complaint.

**I. FACTS**

   This case involves the USDA's Conservation Reserve
Program ("CRP"), under which the Commodity Credit
Corporation ("CCC") enters into 10-year contracts with
eligible participants to convert eligible land to a
conserving use in return for financial and technical
assistance. 7 CFR §§ 1410.3(a), 1410.7(a). One of the
main objectives of the CRP is to cost-effectively reduce
water and wind erosion. 7 CFR § 1410.3(c). The property
owner is required to implement a conservation plan that
complies with CCC guidelines and has been approved by
the conservation district for the land to be entered in the
CRP. 7 CFR § 1410.22(a).
   An appendix containing the contract's terms and
conditions is attached to each CRP contract. The program
is also governed by 16 U .S.C. §§ 3831-3836 and Part
1410 of Title 7 of the Code of Federal Regulations. If

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1796068 (M.D.Ga.)

(Cite as: 2009 WL 1796068 (M.D.Ga.))

there are any conflicts between the terms in the appendix and the regulations, the regulations control.

Balfour Land Company, L.P. is a Georgia limited partnership. Georgia Land Holdings, Inc., a Georgia corporation, is the general partner of Balfour. [FN2] Ira Lee, Jr. ("Mr.Lee"), also known as Sonny Lee, is president of Georgia Land Holdings, Inc., which in effect also makes him the president of Balfour.

> FN2. Balfour Land Company, L.P. and Georgia Land Holdings, Inc. will be collectively referred to as Plaintiff for purposes of this Order.

Prior to the occurrences which make up the basis for this lawsuit, Plaintiff owned real property located in Thomas and Brooks Counties, known as the "Disston Place," consisting of approximately 5,000 acres. The Farm Serial Number ("FSN") assigned by the Farm Service Agency ("FSA") [FN3] for the Disston Place was 539.

> FN3. The Farm Service Agency is part of the United States Department of Agriculture.

Prior to September 21, 2004, there were three CRP contracts related to the Disston Place. These were (1) Contract 147 on Tract 241 for 25.6 acres dated September 22, 1995, with an expiration date of September 30, 2005; (2) Contract 305 on Tract 236 for 16.6 acres dated June 9, 2003, with an expiration date of September 30, 2018; and (3) Contract 306 on Tract 241 for 86.6 acres dated June 9, 2003, with an expiration date of September 30, 2018. On September 21, 2004, Mr. Lee signed a re-enrollment of Contract 147, which was scheduled to expire on September 30, 2005. The re-enrollment contract was designated as Contract 334, which had an effective date of October 1, 2005, and an expiration date of September 30, 2018. Contracts 147, 305, 306, and 334 were considered by the FSA to be four separate contracts.

**\*2** On October 21, 2004, Plaintiff sold the Disston Place to Booth Disston North, LLC and Booth Disston Properties, LLC, both Georgia limited liability companies. [FN4] Hurley Booth, the manager of Booth, and Mr. Lee, representing Plaintiff, both attended the October 21, 2004 closing of the sale of the Disston Place to Booth.

> FN4. Booth Disston North, LLC and Booth Disston Properties, LLC will be referred to collectively as Booth for purposes of this Order.

No writings or documents generated at or for the closing specifically provided that Booth would assume the CRP contracts then governing the Disston Place. Mr. Lee made a personal visit to the FSA office in Thomasville, Georgia on the date of the closing. During that visit, Mr. Lee informed the FSA of the sale of the Disston Place and that Booth intended to assume the CRP contracts.

On January 11, 2005, Richard Small, an agent for Booth, met with FSA program technician Clara Dunbar at the Thomasville FSA office. Mr. Small paid the FSA $318.46 on behalf of Booth. This payment represented liquidated damages to the FSA for the cancellation of Contract 334, which was the re-enrollment of the land previously the subject of Contract 147. The FSA did not ask for Plaintiff's consent prior to terminating Contract 334. During that meeting, Mr. Small was told about the other CRP contracts, and he allegedly said that he knew only of Contract 334. Booth was not required by the FSA to assume Contracts 147, 305, or 306 at that time.

On or about May 31, 2005, Ms. Dunbar informed Plaintiff that Contracts 147, 305, and 306 were still in effect. This was because Booth had not assumed or become Plaintiff's successor in interest to the contracts.

On or about June 9, 2005, a representative of Plaintiff faxed two warranty deeds to the FSA showing that Plaintiff had sold the Disston Place on October 21, 2004. The warranty deeds were supplied to the FSA in response to a previous call to Mr. R.C. Balfour, III, a partner in Plaintiff, from the FSA about another matter pertaining to FSN 539. In that call, Mr. Balfour stated that the property had been sold and the FSA should contact Mr. Lee.

On or about August 22, 2006, Mr. Lee contacted the FSA and stated that a Mr. Whitfield would be coming to the FSA on that date on behalf of Booth to inquire about Contracts 147, 305, and 306. Mr. Whitfield did not appear. The FSA attempted to contact Mr. Whitfield on August 31, September 1, and September 6, 2006 via a cell

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1796068 (M.D.Ga.)

(Cite as: 2009 WL 1796068 (M.D.Ga.))

phone number supplied by Mr. Lee. The attempts to reach Mr. Whitfield were unsuccessful.

On September 19, 2006, Mr. Small made another visit to the Thomasville FSA office. He inquired about the CRP contracts relating to the Disston Place. The FSA provided Mr. Small with the forms used to establish the producer and eligibility information needed to participate in FSA programs. Mr. Small stated that he would take the forms back to his office for completion by Mr. Whitfield, but the forms were never returned to the FSA.

Contract 147 expired by its terms on September 30, 2005. This contract was marked terminated by the FSA on February 16, 2007. The FSA also marked Contracts 305 and 306 as terminated on February 16, 2007. The FSA informed Plaintiff by letter dated February 16, 2007 that Plaintiff was obligated to refund all annual rental payments plus interest, all costshare payments plus interest, and liquidated damages in the total amount of $21,898.80. The appendix to the CRP contracts contains a provision which states that if a participant transfers property subject to a contract and the new owner does not become a successor to the contract within 60 days of the transfer, or within such time as deemed appropriate by the CCC, the contract will be terminated and the original owner must refund all payments made plus interest and any liquidated damages as set out in the appendix.

**\*3** After receiving the FSA's letter regarding the refund and damages, Plaintiff filed for reconsideration and subsequently met with the FSA on April 12, 2007. The FSA upheld its demand. The parties then mediated the matter, with the FSA ultimately adhering to its initial decision. Plaintiff appealed the decision to the United States Department of Agriculture National Appeals Division ("NAD"), which affirmed the ruling of the FSA in a decision dated November 15, 2007.

In its decision, the NAD found as follows: (1) that any verbal agreement between Plaintiff and Booth for Booth to succeed to the CRP contracts should have been reduced to writing prior to the closing of the sale; (2) that there was never any action by Booth as required by regulations to obtain approval from the FSA to succeed to or modify the contracts; (3) that while the FSA allowed Booth to cancel

Contract 334, the cancelling of the contract did not constitute succeeding to the remaining CRP contracts; and (4) that allowing Booth to cancel Contract 334 did not harm Plaintiff because Booth incurred the required liquidated damages.

Plaintiff subsequently requested Director Review of the NAD decision. In a decision issued on February 6, 2008, the deputy director upheld the NAD's determination.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of informing the court of the basis for the motion and showing that there is no genuine issue of material fact by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That burden is "discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the movant has met this burden, the opposing party must present evidence establishing that there is a genuine issue of material fact. Id. In order to defeat summary judgment, the nonmoving party must respond by going beyond the pleadings, and by his own affidavits, or by the discovery on file, identify facts sufficient to establish the existence of a genuine issue for trial. See id. at 322, 324.

A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-250 (internal citations omitted). It is not the court's function at the summary judgment stage to determine credibility or decide the truth of the matter. Id. at 249. Rather, "[t]he evidence of the nonvariant is to

Slip Copy, 2009 WL 1796068 (M.D.Ga.)

(Cite as: 2009 WL 1796068 (M.D.Ga.))

be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## III. CONCLUSIONS OF LAW

### A. Judicial review of the final decision of the National Appeals Division

**\*4** Defendants argue that they are entitled to summary judgment upholding the final administrative decision issued by the NAD. Plaintiff, on the other hand, argues that it is entitled to summary judgment reversing the NAD's decision. Judicial review of final decisions of the NAD is to be in accordance with Chapter 7 of Title 5 of the United States Code. 7 U.S.C. § 6999.

"Summary judgment is particularly appropriate in cases in which a district court is asked to review a decision rendered by a federal administrative agency." *Mahon v. United States Dep't of Agric.,* 485 F.3d 1247, 1253 (11th Cir.2007). However, "even in the context of summary judgment, an agency action is entitled to great deference." *Id.* (quoting *Alabama-Tombigbee Rivers Coalition v. Kempthorne,* 477 F.3d 1250, 1254 (11th Cir.2007)).

The Court is limited in the scope of its review of an agency action. Plaintiff has asked the Court to set aside the NAD's determination because it was arbitrary and capricious and unsupported by substantial evidence. 5 U.S.C. § 706(2)(A) and (E). The Administrative Procedures Act requires the Court to set aside any agency action that is found to be arbitrary, capricious, an abuse of discretion, in excess of statutory authority, without observance of procedure as required by law, or unsupported by substantial evidence. 5 U.S.C. § 706(2). The Court must determine "whether an agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Sierra Club v. Johnson,* 436 F.3d 1269, 1273-74 (11th Cir.2006) (internal quotation marks and citations omitted).

Plaintiff first contends that the NAD's final determination should be reversed because the FSA should have considered estoppel or other equitable relief available through the CRP, but failed to do so. Under the version of the Code of Federal Regulations relied upon by Plaintiff, the Deputy Administrator for Farm Programs,

FSA, or a designee

may provide equitable relief to a participant who has entered into a contract under this chapter, and who is subsequently determined to be in violation of the contract, if the participant, in attempting to comply with the terms of the contract and enrollment requirements, took actions in good faith reliance upon the action or advice of an authorized USDA representative, as determined by the Deputy Administrator, provided:

(1) The Deputy Administrator determines that a participant has been injured by such good faith reliance, in which case, the participant may be authorized, as determined appropriate by the Deputy Administrator, to do any one or more of the following:

(i) Retain payments received under the contract;

(ii) Continue to receive payments under the contract;

(iii) Keep all or part of the land covered by the contract enrolled in the applicable program under this chapter;

(iv) Re-enroll all or part of the land covered by the contract in the applicable program under this chapter; or

**\*5** (v) Any other equitable relief the Deputy Administrator deems appropriate.

7 CFR § 1410.54(b)(1).

Defendants have taken the position that the FSA was required to terminate Contracts 147, 305, and 306, and in turn request refund payments and liquidated damages from Plaintiff, because 60 days passed without another entity becoming the successor to the contracts. Plaintiff argues in response that equitable relief should have been considered because the FSA "acquiesced in the passage of the alleged 60 day deadline, did not inform Balfour of developments with Booth's dealings with FSA, and it did not attempt to enforce the alleged 60 day deadline for more than two years." (Doc. 39, p. 4).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1796068 (M.D.Ga.)

(Cite as: 2009 WL 1796068 (M.D.Ga.))

Before addressing the parties' arguments, the Court must note that its review of the agency's decision has been complicated by the parties' apparent inability to agree on the proper version of the federal regulations applicable to this matter. Plaintiff initially made references to the 1997 and 2007 editions of the Code of Federal Regulations in its motion for summary judgment, but later in its response to Defendants' motion stated that it would apply the 2003 edition of the CFR in order to maintain the parties' stipulations from the administrative hearing. The Court nevertheless found that the parties each presented a different version of what it believes the applicable 2003 regulations to be. In reviewing the transcript of the administrative hearing, the Court notes that the parties agreed that the NAD's decision was governed by "the regulations at Title 7, Code of Federal Regulations, Part 1410...." (Transcript, p. 27). The problem is that through an interim rule signed on May 2, 2003, Part 1410, the Conservation Reserve Program, was completely revised, with an effective date of May 5, 2003. 68 Fed.Reg. 24830-01, 2003 WL 21023039 (May 8, 2003). Plaintiff relies on the pre-May 5, 2003 version of the regulations to support its position, and Defendants look to the revised regulations.

The post-May 5, 2003 regulations state that "[t]he regulations governing the CRP as of May 12, 2002, shall continue to govern contracts in effect as of that date.... This part shall apply to contracts executed on or after May 13, 2002." 7 CFR § 1410.1(j). Contracts 305 and 306 were executed on June 9, 2003, which means that the revised regulations are the applicable regulations. The Court recognizes that Contract 147, which was executed on September 22, 1995, would be governed by a different set of regulations, but in light of the parties' stipulation that the 2003 regulations apply, the revised 2003 regulations should be applied to that contract as well.

Subsection (b) of 7 CFR § 1410.54, upon which Plaintiff relies for its equitable relief argument, was stricken from the regulation with the May 5, 2003 revisions. The Court cannot find that the FSA should have considered equitable relief for Plaintiff when such relief was not provided for under the applicable regulations. Revised § 1410.54 does, however, state that "[t]he

provisions of § 718.8 of this chapter relating to performance based upon the action or advice of an authorized representative of the Department shall be applicable to this part, and may be considered as a basis to provide relief to persons subject to sanctions under this part to the extent that relief is otherwise required by this part." While § 718.8 was revised effective March 31, 2003 to address a topic which has nothing to do with this case FN5, even if the Court considers the former version of § 718.8, it does not appear that any equitable considerations by the FSA were required.

FN5. Revised § 718.8, entitled "Administrative county," reads as follows:

(a) If all land on the farm is physically located in one county, the farm shall be administratively located in such county. If there is no FSA office in the county or the county offices have been consolidated, the farm shall be administratively located in the contiguous county most convenient for the farm operator.

(b) If the land on the farm is located in more than one county, the farm shall be administratively located in either of such counties as the county committees and the farm operator agree. If no agreement can be reached, the farm shall be administratively located in the county where the principal dwelling is situated, or where the major portion of the farm is located if there is no dwelling.

(c) The State committee shall submit all requests to deviate from regulations specified in this section to the Deputy Administrator.

*6 The former version of § 718.8 provides:

(a) Notwithstanding any other provision of the law, performance rendered in good faith based upon action of, or information provided by, any authorized representative of a County or State Farm Service Agency Committee, may be accepted by the

Slip Copy, 2009 WL 1796068 (M.D.Ga.)

(Cite as: 2009 WL 1796068 (M.D.Ga.))

Administrator, FSA (Executive Vice President, CCC), the Associate Administrator, FSA (Vice President, CCC), or the Deputy Administrator for Farm Programs, FSA (Vice President, CCC), as meeting the requirements of the applicable program, and benefits may be extended or payments may be made therefor in accordance with such action or advice to the extent it is deemed desirable in order to provide fair and equitable treatment.

(b) The provisions of this section shall be applicable only if a producer relied upon the action of a county or State committee or an authorized representative of such committee or took action based on information provided by such representative. The authority provided in this part does not extend to cases where the producer knew or had sufficient reason to know that the action or advice of the committee or its authorized representative upon which they relied was improper or erroneous, or where the producer acted in reliance on their own misunderstanding or misinterpretation of program provisions, notices, or advice.

For this regulation to be applicable, Plaintiff would have to show that it acted in good faith in response to the action of, or information provided by, an FSA representative to meet the requirements of the CRP program, or in other words, that an FSA representative incorrectly advised Plaintiff on how to maintain CRP eligibility. Plaintiff, however, has not provided the Court with evidence of any advice or information from the FSA that it relied upon, whether rightly or wrongly. In any event, Plaintiff knew or had reason to know through the appendix attached to the contracts that if it sold the property and the contracts were not succeeded to within 60 days of the sale, the contracts would be terminated and Plaintiff would be required to pay certain amounts to the FSA.

The equitable relief Plaintiff refers to in its briefs is not available to it, as the applicable regulation no longer contains the provision allowing for the relief and because Plaintiff has presented no evidence that it performed in any manner based upon the action or advice of an FSA representative. A review of the revised 2003 regulations does not reveal any other basis for equitable relief. The

Court cannot find that the NAD's decision that the contracts had to be terminated because the new owner did not become a successor to the contract within 60 days of the sale is not in accordance with the law. In fact, 7 CFR § 1410.51(b) specifically requires the FSA to terminate contracts to which the new owner does not succeed. ("If a participant transfers all or part of the right and interest in, ... land subject to a CRP contract and the new owner or operator does not become a successor to such contract within 60 days, or such other time as the Deputy Administrator determines to be appropriate, of such transfer, such contract **shall be terminated** ....") (emphasis added).

**\*7** According to Plaintiff, the true issues in this case are whether allowing Booth to cancel Contract 334 without Plaintiff's permission amounted to Booth becoming a successor to all four CRP contracts and whether allowing Booth to cancel Contract 334 should relieve Plaintiff of any obligations with respect to Contracts 147, 305, and 306. The NAD determined that while it may have been improper for the FSA to allow Booth to cancel Contract 334 without formally accepting it as the successor to that contract, this did not change the fact that the FSA did not approve Booth as a successor in interest to the other three contracts, which were separate contracts. Plaintiff believes that the NAD's final determination should be reversed because it failed to consider that the CRP contracts were not, as suggested by the FSA, separate and distinct contracts, and that to the extent the final determination accepted the reasoning that the contracts were separate contracts, the agency action runs counter to the evidence.

In a Fifth Circuit decision, that court held that when agency decisions are challenged under the "arbitrary and capricious" standard, the burden is on the challenging party, and to carry this burden the challenging party must show that the agency's decision was either not based on a consideration of the relevant factors or amounted to a clear error of judgment. See Ward v. Campbell, 610 F.2d 231, 235 (5th Cir.1980). A finding that the agency's action is arbitrary and capricious would require the court to find that there is no rational basis for the decision. Tackitt v. Prudential Ins. Co. of America, 758 F.2d 1572, 1575 (11th Cir.1985). If the court determines that a rational

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1796068 (M.D.Ga.)

(Cite as: 2009 WL 1796068 (M.D.Ga.))

connection exists between the evidence and the decision, then the court will defer to the expertise of the agency. *Id.*

The Court finds that the NAD's final decision was not arbitrary or capricious or unsupported by substantial evidence. "The substantial evidence test is no more than a recitation of the application of the arbitrary and capricious standard to factual findings." *Fields v. United States Dep't of Labor Review Board,* 173 F.3d 811, 813 (11th Cir.1999) (internal quotation marks omitted). The evidence before the Court is that the four CRP contracts were separate contracts and separate action had to be taken for each. Plaintiff was on notice that if it transferred land subject to a CRP contract and the new owner did not succeed to the new contract within 60 days of the sale, the contract would be terminated and Plaintiff would be responsible for making various reimbursement payments. While Mr. Lee may have told someone with the FSA that Booth intended to assume the contracts, Booth never completed the process to succeed to Contracts 147, 305, and 306. For the NAD to find that the cancellation of Contract 334 had no effect on Plaintiff's obligations under the other three contracts is not arbitrary or capricious or against the evidence. It appears that the FSA and NAD appropriately applied the agency's regulations with regard to Contracts 147, 305, and 306, for which the FSA now seeks reimbursement. Therefore, the Court grants Defendants' motion for summary judgment, denies Plaintiff's motion for summary judgment, and upholds the administrative decision.

**B. Equitable estoppel and unclean hands**

**\*8** Plaintiff contends that the NAD's final determination should be reversed because the NAD director failed to consider and examine the doctrines of unclean hands and estoppel. This is based on the FSA allowing Booth to cancel Contract 334 in violation of the FSA's rules, regulations, and guidelines. Plaintiff asks that the FSA be permanently enjoined from implementing or enforcing the final determination or requiring Plaintiff to pay the reimbursement payments, liquidated damages, and interest payments. Defendants have moved for summary judgment in their favor on the equitable estoppel and unclean hands claims, taking the position that equitable estoppel cannot apply against the government in a suit to

recover public funds, and that an unclean hands argument fails if the Court upholds the NAD's final determination.

The Eleventh Circuit has set out a three-part analysis to determine whether estoppel should apply against the United States government: (1) the traditional private law elements of estoppel must have been present; (2) the Government must have been acting in its private or proprietary capacity as opposed to its public or sovereign capacity; and (3) the Government's agent must have been acting within the scope of his or her authority.[FN6] *United States v. Vonderau,* 837 F.2d 1540, 1541 (11th Cir.1988).

> [FN6.] The Eleventh Circuit has questioned whether estoppel can even be applied against the Government. In *Savoury v. U.S. Attorney General,* 449 F.3d 1307, 1318 (11th Cir.2006), the court stated that "it is far from clear that the doctrine of equitable estoppel may even be applied against a government agency. The Supreme Court has never held that it may be."

Plaintiff must prove four elements to support an equitable estoppel claim: "(1) words, conduct, or acquiescence that induced reliance; (2) willfulness or negligence with regard to the acts, conduct, or acquiescence; (3) detrimental reliance; and (4) affirmative misconduct by the government." *United States v. McCorkle,* 321 F.3d 1292, 1297 (11th Cir.2003). Affirmative misconduct requires more than governmental negligence or inaction. *Id.* Plaintiff argues that the willfulness or negligence prong is met because Booth was improperly allowed to cancel Contract 334, but Plaintiff has not demonstrated anything beyond negligence or oversight on the part of the FSA, which is insufficient establish an estoppel claim. No evidence of affirmative misconduct on the part of the FSA has been presented by Plaintiff. Further, Plaintiff has not directed the Court to any words or conduct on the part of the FSA directed at Plaintiff that it relied upon to its detriment. As Plaintiff cannot meet the requirements for an equitable estoppel claim, Defendants are entitled to summary judgment on Plaintiff's request for equitable estoppel. Defendants are also entitled to summary judgment on Plaintiff's request for a reversal based on the doctrine of unclean hands in light of the Court's decision that the NAD's final determination should be upheld.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1796068 (M.D.Ga.)

(Cite as: 2009 WL 1796068 (M.D.Ga.))

**C. Declaratory judgment**

Plaintiff has moved pursuant to 28 U.S.C. § 2201 for a declaration that the NAD's final determination shall not be implemented or enforced. In light of the Court's determination that the NAD's decision was not arbitrary or capricious or otherwise against the law, Defendants are entitled to summary judgment on Plaintiff's request for declaratory judgment.

**D. Intentional interference with contractual relations**

*9 Plaintiff contends that the FSA or its employee, Ms. Dunbar, intentionally interfered with its CRP contract by knowingly allowing a person or entity who was not a party to the contracts, in this case Booth, to cancel Contract 334. As a result of this intentional interference with contractual relations, Plaintiff contends that it has suffered monetary damages.

The United States has been substituted as the party defendant in place of Clara Dunbar pursuant to the Westfall Act, 28 U.S.C. § 2679. This act immunizes federal employees from liability for torts committed within the scope of their employment. When a federal employee commits such a tort, any private remedy for the tort must be sought against the United States under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. §§ 1346(b), 2672. In light of the Westfall substitution, Plaintiff's tort and negligence claims are now deemed a tort action against the United States under the FTCA.

The doctrine of sovereign immunity bars suit against the United States without its consent. The waiver of sovereign immunity must be unequivocally expressed, and Congress in fact expressed a limited waiver in the FTCA, which provides in part that:

[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

This paragraph is a general waiver of the United States' sovereign immunity. Some of the waiver, however, is taken back in the "Exceptions" section of the FTCA, which provides in part that the § 1346(b) waiver "shall not apply to ... [a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or **interference with contract rights**...." FN7 28 U.S.C. § 2680(h) (emphasis added).

> **FN7.** While 28 U.S.C. § 2680(h) does contain a proviso which includes certain claims within the waiver of sovereign immunity, the proviso relates only to specified claims against federal investigative or law enforcement officers and is not applicable to this case.

An intentional interference with contractual relations claim is expressly exempted from the FTCA.FN8 This means that the United States and its agencies continue to have sovereign immunity from this claim. Because sovereign immunity is not waived for the intentional interference with contractual relations claim, the Court lacks subject matter jurisdiction to consider that claim. See *JBP Acquisitions, LP v. U.S. ex rel. F.D.I.C.,* 224 F.3d 1260, 1264 (11th Cir.2000) ("If the alleged conduct falls within one of these statutory exceptions [to the consent to be sued], the court lacks subject matter jurisdiction over the action."). Accordingly, Plaintiff's intentional interference with contractual relations claim is dismissed for lack of subject matter jurisdiction.FN9

> **FN8.** A number of courts have held that a claim for interference with contractual relations is not within the scope of the FTCA, including the Eighth Circuit, *Selland v. United States,* 966 F.2d 346 (1992), Ninth Circuit, *Goodman Group, Inc. v. Dishroom,* 679 F.2d 182 (1982), and Third Circuit, *Small v. United States,* 333 F.2d 702 (1964).

> **FN9.** "A federal court not only has the power but also the obligation at any time to inquire into

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1796068 (M.D.Ga.)

(Cite as: 2009 WL 1796068 (M.D.Ga.))

jurisdiction whenever the possibility that jurisdiction does not exist arises." *Fitzgerald v. Seaboard Sys. R. R., Inc.,* 760 F.2d 1249, 1251 (11th Cir.1985).

**E. Intentional breach of contract**

*\*10* Plaintiff's next claim is for intentional breach of contract. According to Plaintiff, as a party to the CRP contracts, the FSA or its employee, Ms. Dunbar, breached the contracts by allowing Booth, a non-party, to cancel Contract 334. Plaintiff states that as a result of Ms. Dunbar's intentional breach of contract, it has been damaged in the amount of $21,898.80.

The Tucker Act, 28 U.S.C. § 1346(a), waives sovereign immunity for some suits against the United States based on claims founded upon an express or implied contract. Under the Tucker Act, the district courts have concurrent jurisdiction with the United States Court of Federal Claims for claims not exceeding $10,000. The Court of Federal Claims has exclusive jurisdiction over contract claims against the United States where the claim exceeds $10,000. *See* 28 U.S.C. § 1491(a)(1); *Friedman v. United States,* 391 F.3d 1313, 1315 (11th Cir.2004); *Enlow v. United States,* 161 Fed.Appx. 837, 841 (11th Cir.2006) (unpublished) (holding that the district court lacked jurisdiction to hear a breach of contract claim where the claim was for $2 million).

Since Plaintiff's claim exceeds $10,000, jurisdiction over the breach of contract claim lies exclusively in the Court of Federal Claims. This Court does not have subject matter jurisdiction over Plaintiff's breach of contract claim, and it is hereby dismissed.

**F. Negligence**

Plaintiff's final tort claim is one for negligence. According to Plaintiff, Defendants were negligent in their failure to document that Booth became a successor in interest prior to allowing Booth to cancel Contract 334, or in the alternative, they were negligent in allowing Booth to cancel Contract 334. Plaintiff contends that it has suffered monetary damage as a result of this alleged negligence.

In their motion for summary judgment, Defendants have asked the Court to dismiss Plaintiff's negligence

claim because Plaintiff failed to exhaust its administrative remedies as required by 28 U.S.C. § 2675(a). Plaintiff states in response that it did not have an opportunity prior to filing its complaint to submit the administrative claim under § 2675(a) because it was not until the United States substituted itself as a defendant that it was first admitted that Ms. Dunbar was acting within the course and scope of her employment during the events that gave rise to the claims of negligence.

While a Westfall Act certification carries a rebuttable presumption that the employee has absolute immunity from suit and that the United States is to be substituted as the defendant, Plaintiff has not sought to rebut the certification's claim that Ms. Dunbar was working within the scope of her employment when the actions relating to the CRP contracts were taken. Upon substitution of the United States, the Westfall Act provides that the action "shall proceed in the same manner as any action against the United States filed pursuant to section 1346(b) of this title and shall be subject to the limitations and exceptions applicable to those actions." 28 U.S.C. § 2679(d)(4).

*\*11* The FTCA provides that:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligence or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).

The fact that Plaintiff allegedly did not know that Ms. Dunbar was acting within the scope of her employment until the Westfall certification was filed and the United States was substituted as a defendant does not relieve Plaintiff of its obligation to exhaust its administrative remedies. In the highly publicized case of *Wilson v. Libby,* 535 F.3d 697 (D.C.Cir.2008), where former CIA operative Valerie Plame Wilson and her husband, Joseph Wilson,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1796068 (M.D.Ga.)

(Cite as: 2009 WL 1796068 (M.D.Ga.))

sued the United States, former Vice President Cheney, and others for publicly disclosing Mrs. Wilson's covert operative status, the plaintiffs alleged a tort claim for public disclosure of private facts. With respect to that claim, the United States made a certification pursuant to the Westfall Act that the individual defendants were acting within the scope of their employment as employees of the United States at the time of the conduct alleged in the amended complaint. The circuit court stated that while the certification carries a rebuttable presumption that the employee has absolute immunity and that the United States is to be substituted as a defendant, "[i]f the presumption is not rebutted in this case, the case must be dismissed because the Wilsons have not exhausted their administrative remedies as required to pursue a claim against the United States pursuant to the Federal Tort Claims Act." *Id.* at 711 (citation omitted). Unlike Plaintiff in this case, the Wilsons sought to rebut the certification's claim that the defendants were working within the scope of their employment. The circuit court ultimately found that the defendants were acting within the scope of their employment when the disclosure of Ms. Wilson's identity was made, which meant that the certification was proper and the United States was to be substituted as a defendant. Since the plaintiffs failed to exhaust their administrative remedies under the FTCA for the tort claim, the court upheld the district court's dismissal of the amended complaint. *Id.* at 712-713. The fact that the United States was a substituted defendant under the Westfall Act had no effect on the court's decision that exhaustion was required.[FN10]

> FN10. Other cases where the court has dismissed a tort claim for failure to exhaust administrative remedies after a Westfall substitution of the United States as a defendant has been made include *Rector v. United States,* 243 Fed.Appx. 976 (6th Cir.2007) (unpublished), *Singleton v. United States,* 277 F.3d 864 (6th Cir.2002), *Lumarse, Inc. v. Dep't of Health and Human Servs.,* 191 F.3d 460 (9th Cir.1999), and *Sullivan v. United States,* 21 F.3d 198 (7th Cir.1994).

The requirement that the claimant first present its claim to the appropriate agency is jurisdictional and cannot be waived. *Lykins v. Pointer, Inc.,* 725 F.2d 645

(11th Cir.1984). The exhaustion requirement applies to cases in which the United States is substituted as the party defendant. 28 U.S.C. § 2679(d)(4). Plaintiff did not rebut the certification or show that any exception to Westfall immunity should apply to this case.[FN11] There is no question that Plaintiff did not exhaust its administrative remedies as to the negligence claim as required by the FTCA. Plaintiff's negligence claim must be dismissed for lack of subject matter jurisdiction.

> FN11. There are two exceptions to the immunity provided by the Westfall Act. The United States cannot be substituted as a defendant for claims against federal employees brought for violation of the United States Constitution, 28 U.S.C. § 2679(b)(2), or for the violation of a federal statute, 28 U.S.C. § 2679(b)(2)(B).

**G. Attorney's fees and costs of litigation**

**\*12** As the Court has found that Defendants are entitled to summary judgment on Plaintiff's claims, or in the alternative, that Plaintiff's claims must be dismissed for lack of jurisdiction, Defendants' motion for summary judgment on Plaintiff's request for attorney's fees and other expenses is granted.

**IV. CONCLUSION**

The Court **GRANTS** Defendant's Motion for Summary Judgment (Docs. 29 and 41), and **DENIES** Plaintiff's Motion for Summary Judgment (Doc. 31). Plaintiff's Request for Oral Argument (Doc. 45) is denied as moot.

**SO ORDERED.**

M.D.Ga.,2009.

Balfour Land Co., L.P. v. U.S.
Slip Copy, 2009 WL 1796068 (M.D.Ga.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 1998 WL 887278 (N.D.N.Y.)

(Cite as: 1998 WL 887278 (N.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Pasquale CASABURI, Plaintiff,
v.
UNITED STATES DEPARTMENT OF
AGRICULTURE (a/k/a Farm Services Agency, f/k/a/
FHA) and Northern New York Farmers Market
Cooperative, Defendants.
No. 97–CV–1439 NPM DNH.

Dec. 11, 1998.
Durr, Riley Law Firm, Lowville, New York, for Plaintiff,
Daniel R. King, of counsel.

Honorable Thomas J. Maroney, United States Attorney,
Northern District of New York, Syracuse, New York, for
Defendant United States Department of Agriculture.

Richard J. Graham, Lowville, New York, for Defendant
Northern New York Farmers Cooperative.

William F. Larkin, Assistant U.S. Attorney, of counsel.

MEMORANDUM–DECISION AND ORDER

MCCURN, Senior J.

*1  Currently before the court are motions by
defendants United States Department of Agriculture
("USDA") and Northern New York Farmers Market
Cooperative ("Co–Op") to dismiss the complaint. Because
the court lacks subject matter jurisdiction over this action,
the court dismisses the complaint in the entirety.

BACKGROUND

Plaintiff claims that he delivered livestock to farmer
Dean Ramos ("Ramos") worth $49,040.00 between
September 1994 and November 1995. See Compl. at ¶ 4,
6. Ramos made a total of $24,000.00 worth of payments
to plaintiff. See id. at ¶ 6. On January 5, 1996 the livestock
was auctioned off by the Co–Op. See id. at ¶ 10. Plaintiff

admits that he never had a properly secured security
interest in the livestock. See Plaintiff's Memorandum of
Law in Opposition to Motion to Dismiss at 8 ("Pl.'s
Mem."), docket No. 18.[FN1] The proceeds of the auction,
which plaintiff alleges belong to him, were held in escrow
due to the bankruptcy of Ramos, and a "lien claim" by
defendant USDA. Compl. at ¶ 11–12. On June 27, 1996,
Chief Bankruptcy Judge Stephen D. Gerling ordered the
funds from the sale of the livestock turned over to the
USDA. See USDA Memorandum of Law, Exhibit B
thereto. Plaintiff brings suit, alleging that the USDA "is
wrongfully holding the proceeds" of the auction, Compl.
at ¶ 17, and further alleges pendent party state law claims
against the Co–Op for breach of contract and conversion
of the proceeds from the auction which were not turned
over to plaintiff, but to the USDA. See Compl. at ¶¶ 21,
24. The USDA moves to dismiss for lack of subject matter
jurisdiction pursuant to Federal Rule of Civil Procedure
12(b)(1).

FN1. None of the papers plaintiff submitted to
the court had page numbers, in direct
contravention of Local Rule 10.1(a). For
convenience, the court has taken the liberty of
numbering these papers.

DISCUSSION

A. Plaintiff's Claim Against the USDA

"[I]t is common ground that in our federal system of
limited jurisdiction any party or the court sua sponte, at
any stage in the proceedings, may raise the question of
whether the court has subject matter jurisdiction." United
Food & Commercial Workers Union v. CenterMark
Properties Meriden Square, Inc., 30 F.3d 298, 301 (2d
Cir.1994) (internal citations omitted). Federal Rule of
Civil Procedure 12(h)(3) mandates dismissal of an action
if it appears that the court lacks subject matter jurisdiction.
See Fed.R.Civ.P. 12(h)(3); McGregor v. Goord, 18
F.Supp.2d 204, 206 (1998) (McAvoy, C.J.). It is plaintiff's
"burden to show that the Court may properly exercise
subject matter jurisdiction." McGregor, 18 F.Supp.2d at
206 (citing In re Joint E. & So. Dist. Asbestos Litigation,
14 F.3d 726, 730 (2d Cir.1993)). " 'Without jurisdiction

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 887278 (N.D.N.Y.)

(Cite as: 1998 WL 887278 (N.D.N.Y.))

the court cannot proceed at all in any case. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." ' *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998) (quoting *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868)). "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.' " *Id.* (quoting *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884)) (alteration in original).

*2 Plaintiff alleges that the USDA "is wrongfully holding the proceeds" of the auction, Compl. at ¶ 17, and that it "did not have a perfected lien upon the animals at issue and therefore was not entitled to being treated with priority status in the bankruptcy of the debtor, Dean Ramos." Pl.'s Mem. at 3. Despite plaintiff's protestations to the contrary,[FN2] he is alleging a cause of action for conversion against the USDA.[FN3] *See In re Chateaugay Corp.,* 10 F.3d 944, 957 (2d Cir.1993). Because plaintiff alleges that employees of the United States committed a tort, conversion, his cause of action against the USDA is governed by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b) and 2671–2680.[FN4] Section 2675(a) of that act imposes an absolute presentment requirement which plaintiff must satisfy before he may obtain jurisdiction in this court to sue the United States:

> FN2. *See* Pl.'s Mem. at 2–3, 5, 8.

> FN3. It is significant to note that plaintiff's complaint and opposition papers fail to specify what cognizable cause of action exists against the USDA, other than conversion. Thus, because plaintiff fails to set forth what cause of action he does bring against the USDA, the court may alternatively dismiss his action for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).

> FN4. The FTCA requires the court to apply the substantive law of the place where the act constitutes the tort occurred, here, New York.

*See Castro v. United States,* 34 F.3d 106, 110 (2d Cir.1994). Under New York law, a " 'denial or violation of the plaintiff's dominion, rights, or possession, is the basis of an action for conversion.' " *In re Chateaugay Corp.,* 10 F.3d 944, 957 (2d Cir.1993) (quoting *Sporn v. MCA Records, Inc.,* 58 N.Y.2d 482, 487, 462 N.Y.S.2d 413, 415, 448 N.E.2d 1324, 1326 (1983)). "A conversion implies a wrongful act, a misdelivery, a wrongful disposition, or *withholding of the property." Magnin v. Dinsmore,* 70 N.Y. 410, 417 (1877) (emphasis supplied). Plaintiff's allegation that the USDA is "wrongfully holding the proceeds" of the auction is clearly an action for conversion, as defined by the New York Court of Appeals. *See id.*

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). As the Supreme Court has recognized, "given the clarity of [section 2675(a) ], it is certainly not a 'trap for the unwary' ... [and] the risk that a lawyer will be unable to understand the [presentment] requirement is virtually nonexistent." *McNeil v. United States,* 508 U.S. 106, 113 S.Ct. 1980, 1984, 124 L.Ed.2d 21 (1993). However, this "virtually nonexistent" possibility has come about, because, as plaintiff concedes, he failed to present his claim as section 2675(a) plainly requires.[FN5] Having failed to satisfy the presentment requirement, plaintiff's action may not be maintained, because the court lacks subject matter jurisdiction. *See Millares Guiraldes De Tineo v. United States,* 137 F.3d 715, 720 (2d Cir.1998) (district court lacks subject matter jurisdiction to entertain claim not previously presented to the agency pursuant to 28 U.S.C. § 2675(a)). Accordingly, plaintiff's claim against the USDA must be dismissed.[FN6]

> FN5. As previously discussed, plaintiff futilely argues that his cause of action against the USDA is neither conversion nor any other tort which is

Not Reported in F.Supp.2d, 1998 WL 887278 (N.D.N.Y.)

(Cite as: 1998 WL 887278 (N.D.N.Y.))

within the ambit of the FTCA, but fails to specify what then comprises his cause of action.

FN6. The court observes that even if plaintiff were to now present the claim as required, *see* 28 U.S.C. § 2675(a), his action would be barred by the applicable statute of limitations. Section 2401(b) of the FTCA provides that "[a] tort claim against the United States shall be *forever barred* unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues...." 28 U.S.C. § 2401(b) (emphasis added). The proceeds from the sale of the livestock were turned over to the USDA pursuant to the bankruptcy court's June 27, 1996 Order. The cause of action accrued upon the USDA taking possession of the same. Thus, the statute of limitations has expired.

B. *Plaintiff's Claims Against the Co–Op*

Plaintiff also alleges state law causes of action against the Co–Op. Neither in his complaint nor in his other papers does plaintiff assert the jurisdictional basis for his state law claims. Presumably plaintiff seeks to have this federal court exercise "pendent party" jurisdiction over the Co–Op. *See* 28 U.S.C. § 1367(a). In order to have such jurisdiction, however, the court must otherwise possess, or have possessed, original jurisdiction over another claim against the same or another defendant. *See id.* As the court has no subject matter jurisdiction over the claim against the USDA, the court has no pendent party jurisdiction over the Co–Op. Consequently, plaintiff's claims against the Co–Op must also be dismissed.

CONCLUSION

**\*3** For all of the foregoing reasons, it is hereby ORDERED that plaintiff's complaint be DISMISSED in its entirety.[FN7]

FN7. Inasmuch as the court dismisses plaintiff's action for lack of subject matter jurisdiction, it need not reach defendants' remaining arguments.

IT IS SO ORDERED.

N.D.N.Y.,1998.

Casaburi v. U.S. Dept. of Agr.
Not Reported in F.Supp.2d, 1998 WL 887278 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2010 WL 169624 (E.D.N.Y.)

(Cite as: 2010 WL 169624 (E.D.N.Y.))

**C**

Only the Westlaw citation is currently available.
**This decision was reviewed by West editorial staff
and not assigned editorial enhancements.**

United States District Court,

E.D. New York.
Kevin DOWDY, Plaintiff,
v.
P.A. HERCULES, U.S.H.P.S.; P.A. Annessa,:
U.S.H.P.S.; DR. Francin, M.D., U.S.H.P.S.; DR.
Borecky, M.D., U.S.H.P.S.; DR. R. Beaudouin, M.D.,
U.S.H.P.S.; Doe # 1; DR. D. Marini, M.D., U.S.H.P.S.;
K. Bruno, RN, U.S.H.P.S.; PA-C S. Liberty, U.S.H.P.S.;
PA-C B. Cink, U.S.H.P.S.; RPA-C B. Shull, U.S.H.P.S.;
E. Hughes, Aprn, DC-FNP, U.S.H.P.S.; E. Sweatt, Rpa,
Asha, U.S.H.P.S.; Doe # 2; Doe # 3; Does # 4 To # 25;
The Federal Bureau of Prisons; The United States
Public Health Service and The United States of
America, Defendants.
No. 07-CIV-2488(EVEN) (LB).

Jan. 15, 2010.
Kevin Dowdy, Minersville, PA, pro se.

Artemis Lekakis, United States Attorney's Office,
Brooklyn, NY, for Defendants.

*MEMORANDUM AND ORDER*

VITALIANO, District Judge.

**\*1** Plaintiff Kevin Dowdy, a federal prisoner
appearing *pro se,* brings this action pursuant to the Federal
Torts Claims Act, *Bivens v. Six Unknown Named Agents
of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999,
29 L.Ed.2d 619 (1971), and 42 U.S.C. §§ 1983 and 1985
against United States prison employees and medical staff,
alleging negligence and violation of his Eighth
Amendment rights. Specifically, Dowdy seeks $60 million
in damages for defendants' alleged failure to properly
diagnose and treat his tuberculosis and other health

problems, which he claims has not only exacerbated his
physical pain, but also may have left him sterile.
Defendants now move to dismiss the complaint pursuant
to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6),
or, in the alternative, for summary judgment pursuant to
Rule 56.[FN1] Defendants have represented to the Court that
they served plaintiff with the motion and accompanying
documentation (Docket # 48), but plaintiff has not filed
any opposition.

> FN1. The motion has been brought on behalf of
> the United States, the United States Bureau of
> Prisons ("USBOP"), the United States Public
> Health Service ("USPHS"), and all of the current
> and former employees of both agencies identified
> by name in the case caption, with the exception
> of defendant Shull, who was never served with
> process. Given the commonality of issues,
> however, the claims against Shull are dismissed
> with prejudice. *See* Parts 3b and 4b, *infra.*

The Court finds, for the reasons described below, that all
of plaintiff s claims fail as a matter of law, with the
exception of one *Bivens* claim against defendant Doe # 3.

*Background*

The following allegations are drawn from the text of
the complaint and are considered true for the purposes of
the motion.

Plaintiff alleges that he contracted tuberculosis while
in custody at Lackawana County Prison in
Pennsylvania.[FN2] (Compl.¶¶ 13-14.) On June 18, 2004,
plaintiff was transferred to the Metropolitan Detention
Center in Brooklyn, New York ("MDC"). (*Id.* ¶ 16.) Upon
arrival, Dowdy was given a medical examination by
defendant physician assistant Hercules, but she "failed to
recognize" his outward signs of having tuberculosis. (*Id.*
¶ 17.) Plaintiff also alleges that he received a "PPD"
injection to test for the presence of the disease. (*Id.*) On
June 20, 2004, defendant Doe # 1, who plaintiff believes
to be defendant Annessa (*id.* ¶ 19), examined the injection
site and noticed an abnormal reaction, but improperly
attributed it to prior vaccinations, not tuberculosis. (*Id.* ¶

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 169624 (E.D.N.Y.)

(Cite as: 2010 WL 169624 (E.D.N.Y.))

18.) Dowdy was then examined by defendant Dr. Francin, who, after stating her belief that Dowdy had the disease, ordered chest x-rays and administered a blood test. (*Id.* ¶ 19.) Although still showing symptoms two days later, plaintiff was moved from the medical intake unit to general population at MDC. (*Id.* ¶ 20.) He routinely complained to the prison staff who administered medication to inmates, but his pleas were ignored. (*Id.* ¶ 21.)

> FN2. Plaintiff brought a separate civil rights action in the Middle District of Pennsylvania arising out of his alleged contraction of the disease and subsequent inadequate medical treatment at Lackawana County Prison, but his complaint was dismissed for failure to file within the applicable statute of limitations. *See Dowdy v. Donate,* 07-CV-0863 (M.D. Pa. filed Aug. 15, 2008) (J. Muir).

Two weeks later, Francin informed Dowdy that he had tuberculosis, and gave him the option of starting treatment immediately or waiting until he reached the facility where he would serve his sentence. (*Id.* ¶ 22.) When Dowdy requested that treatment begin as soon as possible, Francin "was not pleased" and no medication or "medical attention" was dispensed for another three weeks. (*Id.* ¶¶ 22-23.) At that point, Dowdy once again met with Francin, who explained that more blood tests were necessary and provided treatment consent forms. (*Id.* ¶ 24.) However, one day after this meeting, on or about July 30, 2004, Dowdy was transferred out of MDC to the Federal Correctional Institution in Raybrook, New York ("Raybrook"). (*Id.* ¶ 25.)

**\*2** Upon arrival, Dowdy explained to defendant physician assistant Doe # 2 that he had received no treatment for his tuberculosis, and that he was suffering from severe testicular pain. (*Id.* ¶ 26.) Despite the efforts of his mother and an outside doctor to contact Raybrook on his behalf, Dowdy did not receive any treatment for approximately four more weeks. (*Id.* ¶¶ 26-27.) Over the course of the following six months, Dowdy took a variety of medications for his multiple ailments, but such treatment either had no effect or exacerbated his pain. (*Id.* ¶¶ 27-29.) Plaintiff filed numerous administrative requests

to remedy this "medication experimentation", but he did not get any relief. (*Id.* ¶ 29.) After nine months, he saw an outside urologist, who examined what turned out to be a testicular cyst and ordered him to sleep with heating pads to alleviate the pain. (*Id.* ¶ 32.) Although Dowdy requested permission to have a heating pad, defendant Doe # 3, the assistant warden of Raybrook, refused. (*Id.*)

Dowdy claims to be in poor health, suffering from severe pain and "fear" that his delay and/or lack of treatment has led to sterility. (*Id.* ¶¶ 33-34.) He asserts that defendants, both "as individuals" and in their "official capacities", "maliciously" and "negligently" misdiagnosed his condition (*id.* ¶ 2), and withheld necessary medical treatments. (*Id.* ¶ 1.) On May 4, 2007, he filed the complaint in the current action seeking $10 million in compensatory damages and $50 million in punitive damages. (*Id.* ¶¶ 35-38.)

### *Discussion*

The Court discerns from the complaint four alleged theories of liability: (1) the failure of Hercules and Doe # 1 at MDC to immediately diagnose tuberculosis; (2) the delay of treatment by Francin at MDC, Doe # 2 at Raybrook, and other unspecified defendants; (3) the inadequacy of treatment provided by unspecified defendants; and (4) the denial of the pain-alleviating heating pad by Doe # 3 at Raybrook. Aside from Hercules, Francin, and Does # 1-3, no defendants in the case caption are referenced or discussed in the body of the complaint.

The Court is mindful that *pro se* submissions are "held to less stringent standards than formal pleadings drafted by lawyers", *Erickson v. Pardus.* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (internal quotation marks omitted), particularly when allegations concern civil rights violations. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008);. *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004). Consequently, Dowdy's *pro se* complaint must be read liberally and interpreted as raising the strongest arguments it suggests. *Triestman v. Fed-Bureau of Prisons,* 470 F.3d 471, 474-75 (2d Cir.2006). In light of this "special solicitude", *Ruotolo v. I.R.S.,* 28 F.3d 6, 8 (2d Cir.1994), the Court concludes that Dowdy's complaint does state potentially valid claims for relief. Dowdy not only alleges that defendants' inadequate medical attention deprived him

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 169624 (E.D.N.Y.)

(Cite as: 2010 WL 169624 (E.D.N.Y.))

of his constitutional right to be free of cruel and unusual punishment, but also that defendants were simply incompetent, effectively committing medical malpractice by "negligently ... withholding necessary medical treatment." (Compl.¶ 2.)

1. *Standards of Review*

**\*3** Fed. R. Civ. P. 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." This rule does not compel a litigant to supply "detailed factual allegations" in support of his claims, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "A pleading that offers 'labels and conclusions' ... will not do.' " *Id.* (quoting *Twombly,* 550 U.S. at 555); *see also In re NYSE Specialist Sec. Litig.,* 503 F.3d 89, 95 (2d Cir.2007). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' " *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 555 U.S. at 557).

To survive a Fed.R.Civ.P. 12(b) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 555 U.S. at 570). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotations omitted); *see Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (interpreting *Twombly* to require a "plausibility standard" that "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible") (emphasis omitted), *rev'd on other grounds,* --- U.S. ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). On a Rule 12(b)(6) motion, the Court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.,* 517 F.3d 104, 115 (2d Cir.2008). The court may only consider the pleading itself, documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when

bringing suit, and matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995).

Rule 12(b)(1) motions to dismiss based on lack of subject matter jurisdiction, however, do not require the court to draw all reasonable inferences in favor of plaintiffs. *See J.S. ex rel. N.S. v. Attica Cent. Schs.,* 386 F.3d 107, 110 (2d Cir.2004); *Shipping Fin. Servs. Corp v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998). Further, "[i]n resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Hamm v. United States,* 483 F.3d 135, 137 (2d Cir.2007) (quoting *Luckett v. Bure,* 290 F.3d 493, 496-97 (2d Cir.2002); *see LeBlanc v. Cleveland,* 198 F.3d 353, 356 (2d Cir.1999) (noting that "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings").

2. *Plaintiff'sFailure To Oppose Defendants' Motion*

**\*4** Where, as here, the plaintiff does not oppose a Rule 12 motion, the district court still must determine whether the complaint is sufficient to state a claim on which relief may be granted. *McCall v. Pataki,* 232 F.3d 321, 322-323 (2d Cir.2000); *Pickett v. Leclaire,* 2009 U.S. Dist. LEXIS 96947, 2009 WL 3320676 at \*3 (S.D.N.Y. Oct. 13, 2009). If a pleading contains sufficient factual matter, accepted as true, to show potential entitlement to relief, "the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *McCall,* 232 F.3d at 323.

Defendants have, in the alternative, moved for summary judgment, and in that connection have submitted a declaration and Local Rule 56.1 and 56.2 statements. Pursuant to Fed.R.Civ.P. 12(d), the Court has discretion to consider additional materials and "convert a motion for judgment on the pleadings to a motion for summary judgment if the Court deems it necessary to refer to matters outside of the pleadings." *In re Risk Mgmt. Alternatives, Inc.,* 208 F.R.D. 493, 500 (S.D.N.Y.2002); *see Mitchell v. Dep't of Corr.,* 2008 U.S. Dist. LEXIS

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 169624 (E.D.N.Y.)

(Cite as: 2010 WL 169624 (E.D.N.Y.))

24830, at *9-*12 (S.D.N.Y. Feb. 20, 2008). Here, however, in light of plaintiff s incarceration, his *pro se* status, and the lack of any discovery, the Court declines to convert defendants' motion. *See Perez v. Hawk,* 302 F.Supp.2d 9, 16 (E.D.N.Y.2004) (refusing to convert to summary judgment motion where plaintiff was *pro se* prisoner asserting *Bivens* claim for inadequate medical care); *see also Meadows v. Planet Aid, Inc.,* 2009 U.S. Dist. LEXIS 104671, 2009 WL 3734316 at *21 (E.D.N.Y. Nov. 4, 2009) (finding conversion to summary judgment inappropriate "since Plaintiff is pro se and has not yet had an opportunity to conduct any discovery").

3. *Tort Claims*

a) *Tort Claims Against USBOP, USPHS, and Individuals In Their Official Capacity*

It is well established that "the United States, as sovereign, is immune from suit save as it consents to be sued." *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981) (internal quotation marks and citations omitted). Therefore, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit," *FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994), as such waiver is a "prerequisite" for subject matter jurisdiction in federal district courts. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983); *Presidential Gardens Assocs. v. United States,* 175 F.3d 132, 139 (2d Cir.1999). Moreover, sovereign immunity also extends to officers of government employees when they "act in their official capacities", *Dotson v. Griesa,* 398 F.3d 156, 177 (2d Cir.2005), because such actions are "essentially a suit against the United States." *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994).

The Federal Tort Claims Act ("FTCA") is a limited waiver of sovereign immunity applying to "claims against the United States, for money damages ... for injury ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where

the act or omission occurred." 28 U.S.C. § 1346(b). The FTCA makes a lawsuit against the United States itself the *exclusive* remedy for common law tort actions against federal agencies or employees acting on behalf of the government. 28 U.S.C. § 2679(b) (1); *see Rivera v. United States,* 928 F.2d 592, 608-09 (2d Cir.1991); *Rodriguez v. United States,* 2001 U.S. Dist. LEXIS 19876, at *6 (E.D.N.Y. Nov. 5, 2001); *see also Baez v. Bureau of Prisons,* 2004 U.S. Dist. LEXIS 8183, 2004 WL 1777583 at *21-*22 (S.D.N.Y. May 11, 2004) (noting that the FTCA "requires that suit be brought against the United States itself, not against individual defendants or agencies"). To the extent that the complaint states causes of action sounding in tort against defendant agencies USBOP and USPHS, or against any of the individual defendants acting in their official capacity-*i.e.,* acting within the scope of their employment-those claims are dismissed with prejudice for lack of subject matter jurisdiction. *See, e.g., Sereika v. Patel,* 411 F.Supp.2d 397, 409 (S.D.N.Y.2006) (dismissing FTCA claims against Bureau of Prisons for lack of subject matter jurisdiction).

b) *Tort Claims Against Individual Defendants in their Non-Official Capacities*

**\*5** As implied by the text of the FTCA, lawsuits against federal employees arising out of actions taken *outside* of the scope of their federal employment would face no sovereign immunity obstacles, because such claims are against those individuals, not the United States. *See Gutierrez De Martinez v. Lamagno,* 515 U.S. 417, 420, 115 S.Ct. 2227, 2229, 132 L.Ed.2d 375 (1995) ("[I]f the [federal] employee was acting outside the scope of his employment, the plaintiffs' tort action could proceed against him."). Here, although Dowdy purports to bring claims against defendants both in their "official capacities" and "as individuals" (Compl.¶¶ 1-4), the complaint does not allege any common law tort committed by any individual defendant-all of whom are USBOP and USPHS employees-separate and apart from acts or omissions within the scope of their employment duties in treating prisoners and/or making decisions regarding their welfare.[FN3] Moreover, there is simply no indication that plaintiff intended to bring tort claims either (a) based on conduct outside of the scope of these defendants'

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 169624 (E.D.N.Y.)

(Cite as: 2010 WL 169624 (E.D.N.Y.))

employment, or (b) against any "Doe" defendants not employed by the federal government. Accordingly, any and all tort claims against defendants in their individual capacities are dismissed.

> FN3. The simple fact that plaintiff has alleged that defendants have engaged in *intentional* torts "does not compel the conclusion that the employee was acting outside the scope of employment" under New York law, which applies to the instant FTCA claims. *Griebsch v. Weaver,* 2005 U.S. Dist. LEXIS 44250, 2005 WL 2260374 at *7 (N.D.N.Y. Sept. 16, 2005).

### c) FTCA Claims Against The United States

Although the United States is the proper named defendant in a FTCA claim, the Court is nonetheless without subject matter jurisdiction to hear Dowdy's claim on the merits because, under the FTCA, "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues...." 28 U.S.C. § 2401(b). This administrative exhaustion requirement is jurisdictional and cannot be waived. *See Celestine v. Mount Vernon Neighborhood Health Ctr.,* 403 F.3d 76, 82 (2d Cir.2005) (*citing McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 1984, 124 L.Ed.2d 21 (1993)). The burden is on plaintiff to demonstrate subject matter jurisdiction in compliance with the FTCA's requirements. *In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 210, 214 (2d Cir.1987); *see also Adelke v. United States,* 355 F.3d 144, 153 (2d Cir.2004) (noting that this "procedural hurdle applies equally to litigants with counsel and to those proceeding *pro se* ").

On April 20, 2007, Dowdy filed a "Form 95" administrative claim against MDC, seeking $25,000 in damages for personal injury arising out of the "Medical Staff's negligence and refusal to begin immediate treatment of the TB". (Declaration of Adam M. Johnson, Ex. C.) Dowdy listed the date of the incident giving rise to his claim as "on[ ] or about 6/20/04". Therefore, he was required to file his administrative claim by June 20, 2006 to comply with the FTCA. Even if the Court were to disregard plaintiff's self-report of the date of injury, a FTCA claim accrues "at the time the injury or harm is inflicted, or when the plaintiff knows both the existence

and cause of his injury." *Moreno-Ortiz v. United States,* 2009 U.S. Dist. LEXIS 14396, at *6 (S.D.N.Y. Feb. 24, 2009) (*citing United States v. Kubrick,* 444 U.S. 111, 120, 100 S.Ct. 352, 358, 62 L.Ed.2d 259 (1979)). Accepting the allegations in the complaint as true, plaintiff was aware of the existence and cause of his injuries at MDC by Autumn 2004, when he was transferred to Raybrook without commencement of treatment. (Compl.¶ 26.) There is no evidence of any other Form 95 filed by plaintiff or of any administrative claim relating to his treatment. In short, Dowdy cannot escape his failure to timely file an administrative claim based on the conduct at issue in this lawsuit. Consequently, the Court is without jurisdiction to hear his FTCA claims against the United States, and such claims are hereby dismissed with prejudice. *See, e.g., Sereika,* 411 F.Supp.2d at 409-10 (dismissing FTCA claim for failure to present claim to the Bureau of Prisons within the two year statute of limitations).

### 4. Constitutional Claims

**\*6** Plaintiff also invokes *Bivens,* which permits damages actions against individual federal officers who violate clearly established constitutional rights while acting under color of federal law. 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619; *Robinson,* 21 F.3d at 510. Specifically, he alleges an unjustified denial of proper medical care, which constitutes a violation of the Eighth Amendment where "prison official[s] acted with 'deliberate indifference' to the inmate's 'serious medical needs.' " *Sereika,* 411 F.Supp.2d at 404 (quoting *Estelle v. Gamble,* 429 U.S. 97, 104-05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251(1976)). However, *Bivens* claims are only permitted when brought against federal officials in their individual capacity, because the United States has not waived sovereign immunity for "constitutional tort claims against the United States, its agencies, or federal employees sued in their official capacities." *Hawk,* 302 F.Supp.2d at 18; *see Robinson,* 21 F.3d at 510 (dismissing *Bivens* claims against federal employees acting in their official capacities on grounds of sovereign immunity); *Sereika,* 411 F.Supp.2d at 402 (noting that "a *Bivens* claim against a federal agency is precluded"). Accordingly, any purported *Bivens* claims against the United States, USPHS, USBOP, or any individual defendant in their official capacity are dismissed.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 169624 (E.D.N.Y.)

(Cite as: 2010 WL 169624 (E.D.N.Y.))

*a) Claims Against Defendants Not Discussed In The Complaint*

Although plaintiff purports to sue more than 30 separate individual defendants, his complaint only specifically discusses the actions of five: Hercules, Francin, and Does # 1,2, and 3. "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's *own individual actions,* has violated the Constitution." *Iqbal,* 129 S.Ct. at 1948 (emphasis added); *see Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987) (noting that personal involvement in constitutional deprivation is a prerequisite to *Bivens* recovery). The requisite personal involvement can be demonstrated by evidence that the defendant (1) participated directly in the alleged constitutional violation; or (2) had knowledge of the violation but failed to remedy the wrong; or (3) created the policy or custom under which the violation occurred; or (4) was grossly negligent in supervising subordinates who caused the violations; or (5) deliberately failed to act on information indicating that deprivations were taking place. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). Obviously, where the complaint does not reference individuals, much less their personal involvement in a deprivation, claims against them should be dismissed for failure to satisfy pleading requirements. *See Garcia v. Watts,* 2009 U.S. Dist. LEXIS 84697, at *46-*47 (S.D.N.Y. Aug. 27, 2009), *adopted,* 2009 U.S. Dist. LEXIS 84692, 2009 WL 2777085 (S.D.N.Y. Sept. 1, 2009) ("Where, as here, a complainant names a defendant in the caption but the complaint contains no substantive allegation against the defendant, dismissal of the complaint is appropriate"); *see also Robinson v. Lindsay,* 2009 U.S. Dist. LEXIS 86117, 2009 WL 3007920 at *8 (E.D.N.Y. Sept. 21, 2009) (dismissing *Bivens* claim for inadequate medical treatment where prisoner failed to allege named defendant's personal involvement in deprivation of constitutional rights); *Hawk,* 302 F.Supp.2d at 19 (same). Accordingly, Dowdy's *Bivens* claims against any defendant named in the case caption who is not specifically discussed in the text of the complaint are dismissed.

*7 However, the door is not forever barred. Plaintiff may, if he can, amend the complaint to plead facts sufficient to give rise to an inference that other specific individuals were personally involved in the claimed violation of his constitutional rights, and to provide a "short and plain" description of what each defendant allegedly did or failed to do. Fed.R.Civ.P. 8(a)(2); *see Shomo v. City of New York,* 2009 U.S.App. LEXIS 23076, 2009 WL 2767032 at *13 (2d Cir. Sept. 2, 2009) (*quoting Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999)) (noting that a *pro se* complaint should not be dismissed "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated"); *Hawk,* 302 F.Supp.2d at 33 (same). However, for reasons discussed below in Part 4b, certain of Dowdy's original *Bivens* claims have been dismissed with prejudice, for they are not capable of valid amendment.

*b) Claims Against Hercules, Francin, Does # 1 and # 2, and USPHS Employees*

The majority of the defendants listed in the case caption-and every non-"Doe" individual defendant-are members of the USPHS. However, plaintiff cannot bring *Bivens* claims against any individual employees of the USPHS for actions that they take within the scope of their medical duties because Congress has provided them with absolute immunity. Section 233(a) of the Public Health Service Act makes the FTCA the exclusive remedy for "damage for personal injury ... resulting from the performance of medical, surgical, dental, or related functions ... by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment". 42 U.S.C. § 233(a); *see Geralds v. Patel,* 2009 U.S. Dist. LEXIS 14721, at *2-*3 (E.D.N.Y. Feb. 25, 2009); *Brown v. McElroy,* 160 F.Supp.2d 699, 703 (S.D.N.Y.2001). The Second Circuit interprets § 233(a) to extend to constitutional violations as well, shielding USPHS employees from *Bivens* actions arising out of their employment duties. *Cuoco v. Moritsugu,* 222 F.3d 99, 107-08 (2d Cir.2000); *see also Wallace v. Dawson,* 302 Fed. Appx. 52, 54 (2d Cir.2008) ("Because [defendant] is a dentist and member of the Public Health Service, [plaintiff] is barred from seeking Bivens damages for injuries allegedly caused by [defendant] within the scope of his employment.").

The complaint lists defendants Hercules, Francin, and Annessa (presumably Doe # 1) as employees of the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 169624 (E.D.N.Y.)

(Cite as: 2010 WL 169624 (E.D.N.Y.))

USPHS.[FN4] Doe # 2 is described as a physician assistant at Raybrook. Dowdy's allegations with regard to the conduct of these defendants all clearly refer to acts or omissions within the scope of their job and medical duties in attending to a prisoner's health and welfare, including providing examinations and rendering treatment. As a result, Hercules, Francin, Annessa/Doe # 1 and the other USPHS employees targeted by Dowdy are entitled to statutory immunity under § 233 and, therefore, the *Bivens* claims against them are dismissed with prejudice.

> FN4. On this jurisdictional issue, the Court also considers declarations by Hercules and Annessa stating that they were employed by USPHS at the time of the alleged incidents. (Johnson Decl. Exs. L, M.)

*c) Claim Against Doe # 3*

**\*8** The only *Bivens* claim yet to be addressed-and which defendants fail to discuss in their moving papers-is based on Dowdy's allegation that Doe # 3, an assistant warden at Raybrook, refused to let him use heating pads for his testicular pain, in direct contravention of the urologist's "order" to do so. (Compl.¶ 32.) Although a prisoner's constitutional right is only to the receipt of "medical care-not the type or scope of medical care which he personally desires", *United States ex. rel. Hyde v. McGinnis,* 429 F.2d 864, 867-68 (2d Cir.1970) (*quoting Coppinger v. Townsend,* 398 F.2d 392, 394 (10th Cir.1968), "a deliberate indifference claim may lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians." *Johnson v. Wright,* 412 F.3d 398, 404 (2d Cir.2005). As an assistant warden, Doe # 3 would not fall within the scope of the § 233 absolute immunity. Plaintiff has therefore sufficiently pled a potential *Bivens* claim against Doe # 3, and this one cause of action survives defendants' motion to dismiss.[FN5]

> FN5. Since the Court has dismissed plaintiffs other claims on a variety of grounds, it is not necessary to address defendants' arguments that plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a). Defendants do not specifically argue

that the claim against Doe # 3 for testicular pain is precluded by the PLRA.

5. *§ 1983 Claims*

Plaintiff purports to bring civil rights claims against defendants pursuant to 42 U.S.C. § 1983, but this statute "provides relief only against defendants who act under color of state, not federal, law." *Khan v. United States,* 271 F.Supp.2d 409, 412 (E.D.N.Y.2003) (*citing Wheelin v. Wheeler,* 373 U.S. 647, 650, 83 S.Ct. 1441, 1444, 10 L.Ed.2d 605 (1963). As nothing in the complaint indicates that plaintiff is making any claims against any state actors, his § 1983 are dismissed. *Cf. Spinale v. U.S. Dep't of Agric.,* 621 F.Supp.2d 112, 119 (S.D.N.Y.2009), *aff'd,* 2009 U.S.App. LEXIS 26959 (2d Cir. Dec. 11, 2009) ("Where a plaintiff brings a Section 1983 claim against federal defendants in error, the proper course of action is to construe the complaint as stating a cause of action under [*Bivens* ].").

6. *§ 1985 Claims*

Plaintiff also purports to bring claims pursuant to 42 U.S.C. § 1985(3), which requires proof that: (1) a conspiracy existed; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons equal protection or equal privileges and immunities under the laws; and a showing that (3) an act in furtherance of the conspiracy occurred; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States. *See United Bhd. of Carpenters & Joiners, Local 610 v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Moreover, a § 1985(3) claim requires demonstration of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). The complaint is devoid of any allegations of conspiracy or discriminatory intent. Accordingly, plaintiff's § 1985 claims are dismissed.

7. *§ 1331 Claims*

Finally, plaintiff seeks to assert an independent cause of action pursuant to 28 U.S.C. § 1331. However, § 1331 is purely a grant of jurisdiction to the district courts that neither provides any basis for substantive relief nor waives

Not Reported in F.Supp.2d, 2010 WL 169624 (E.D.N.Y.)

(Cite as: 2010 WL 169624 (E.D.N.Y.))

sovereign immunity so as to reanimate plaintiff's claims that, as discussed above, *see supra* Part 3, fail due to lack of subject matter jurisdiction. *See Mack v. United States, 814 F.2d 120, 122 (2d Cir.1987)*; *Zynger v. Dep't of Homeland Sec.*, 615 F.Supp.2d 50, 56 (E.D.N.Y.2009).

### *Conclusion*

**\*9** For the foregoing reasons, all of plaintiff s claims are dismissed except for his *Bivens* claim against Doe # 3. Plaintiff is permitted to amend his complaint to assert additional *Bivens* claims. If he chooses to do so, he must name the individual defendants involved (or identify them as "Doe" and provide sufficient information to permit defendants to identify that person), and as best he can describe in detail how they participated in the deprivation of his constitutional rights. Plaintiff is reminded that alleging mere negligence is insufficient, since his FTCA claims are jurisdictionally barred. Rather, he must present sufficient factual allegations to state a plausible claim that each identified defendant was *personally involved* in acting with "deliberate indifference" to his "serious medical needs". Further, the amended complaint must be captioned "Amended Complaint," and shall bear docket number 07-CV-2488. It must be submitted to the Court within 30 days from the date of this Order. If plaintiff fails to produce an amended complaint within that time period, the action will proceed solely on the *Bivens* claim against Doe # 3, all other claims having been dismissed.

In light of the Court's determination that plaintiff may amend his complaint to allege additional facts, defendants' motion to transfer venue to the Northern District of New York is granted but stayed for 45 days from the date of this Order. Upon the expiration of the stay, the Clerk of the Court is directed to transfer this matter to the United States District Court in the Northern District of New York and to close this case.

SO ORDERED.

E.D.N.Y.,2010.

Dowdy v. Hercules
Not Reported in F.Supp.2d, 2010 WL 169624 (E.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.